699 A.2d 456

M. Kenneth LONG, Jr., et al.

v.

AMERICAN LEGION POTOMAC POST 202, INC.

No. 1601, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Sept. 2, 1997.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief, M. Kenneth Long, Jr.), Baltimore, William McC. Schildt (Strite and Schildt, on the brief, for Board of County Commissioners, etc.), Hagerstown, for Appellants.

Wiley S. Rutledge (Rutledge & Dwyer, P.A., on the brief), Hagerstown, for Appellee.

Before CATHELL and DAVIS, JJ., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

THEODORE G. BLOOM, Judge.

By Chapter 636 of the Acts of 1995, now codified as Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 255C, the Maryland General Assembly legalized, in Washington County, a form of gambling devices known as "tip jars;" created the Washington County Gaming Commission; established a system of licensing the operation of tip jars; promulgated certain rules and regulations and authorized the adoption by the Board of County Commissioners of Washington County of additional regulations; and provided for the designation of an agency to administer the law and, pursuant to subsection (r), to deny, suspend, or revoke licenses and impose fines for violations of § 255C. Subsection (u) of § 255C specifically proscribed certain conduct by providing:

(1) A person who does not hold a wholesaler's license may not sell a tip jar packet.

(2) A person who does not hold a tip jar license may not offer to another person a chance from a tip jar or otherwise operate a tip jar.

(3) A person who holds a tip jar license may not allow an individual under the age of 18 years to play a tip jar.

(4) A person who violates this *section* is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000. (Emphasis added.)

(5) Each sale or offer of a chance from a tip jar is considered a separate offense.

In January 1996, appellant Washington County Gaming Commission (Gaming Commission), by letter, notified appellee, American Legion, Potomac Post 202, Inc., that it had been cited for certain violations of the Washington County gaming Rules and Regulations, for each of which the County Gaming

Agency proposed to fine appellant and suspend its wholesaler's license. Another letter was sent in March 1996 as an amendment to the January letter, but did not contain any new or additional charges. The proposed penalty for each charged violation (which did not include any conduct specifically proscribed by subsection (u)) was a fifteen day license suspension and the maximum fine prescribed in subsection (r) for a first offense—$1,500.

Appellee responded to the March letter by promptly filing in the Circuit Court for Washington County a declaratory judgment action against appellants, the Board of County Commissioners of Washington County, the Gaming Commission, the Office of the Gaming Commission Coordinator, and M. Kenneth Long, Jr., Esquire, the State's Attorney for Washington County, seeking a declaration that Article 27, § 255C creates a statutorily defined misdemeanor; that the District Court of Maryland has exclusive original jurisdiction to hear charges against appellant involving a violation of Article 27, § 255C; and that the hearing procedures as outlined in Article 27, § 255C and § 1–111(b) of the Gaming Commission Rules are in violation of appellant's due process rights and, therefore, unconstitutional.[1] Appellee's complaint also requested ancillary relief: an expedited hearing and an award of costs.

Appellee argued, both below and on this appeal, that, by virtue of Md.Code (1957, 1996 Repl.Vol.) Art. 38, § 1 and the plain language of subsection (t) of Art. 27, § 255C, the threatened fines proposed to be assessed against appellee would be criminal penalties, which can only be imposed by the District

---

1. Subsection (t) of § 255C provided that before the county agency may take action against a license under subsection (r), it shall give the licensee an opportunity for a hearing before the Board of County Commissioner, which shall be held in the manner specified in Title 10, Subtitle 2 of the State Government Article (the Administrative Procedure Act). Section 10–217 of that act provides that the standard of proof in a contested hearing shall be the preponderance of evidence. Consistent therewith, § 1–111(b) of the Gaming Commission's Rules and Regulations provides that regulatory violations must be proved by a preponderance of the evidence.

Court upon a prosecution brought by the State's attorney, and that in such prosecution appellee would be entitled, as a matter of due process, to require that the case against it be proved beyond a reasonable doubt. The circuit court agreed with appellee, granted its motion for summary judgment, and declared:

> [T]his court finds as a matter of law that Md. Ann.Code Art. 27, § 255C creates a statutorily defined misdemeanor; that the District Court for Maryland has exclusive original jurisdiction to hear the charges against the Plaintiff involving a violation of Md. Ann.Code Art. 27, § 255C; that the hearing procedures outlined by Md. Ann.Code Art 27, § 255C(t) and Maryland [sic] Rule 1–111(b) are in violation of Plaintiff's due process rights and, therefore, unconstitutional.

In this appeal from that declaratory judgment, appellants present a single question:

> Did the circuit court err in declaring that the tip jar violations with which the American Legion has been charged are criminal offenses over which the District Court of Maryland has exclusive original jurisdiction, and that the administrative hearing procedures authorized by Art. 27, § 255C are thus unconstitutional?

Our answer to that question is "Yes;" therefore, we shall reverse the judgment of the circuit court.

The court based its decision on Article 38, § 1 of the Maryland Code. Article 38, entitled FINES AND FORFEI-TURES, now contains six sections, which are individually titled as follows: § 1 Mode of recovery; § 2 To Whom Paid; § 3 No portion to be paid informer; § 4 Directions as to payment of fine; failure to pay fine; collection in civil actions, costs not part of penalty; concurrent sentences; § 4B Paying fines or costs with bad check, etc., § 5 Portion of fines and forfeited recognizances to go to law libraries. The precursor to Article 38 was first enacted by the Maryland General Assembly as Chapter 6 of the laws of 1777. It has undergone a few changes in the ensuing 220 years, but the basic purpose of the law is now, as it was then, to establish and maintain

procedures for the collection of criminal fines and forfeitures and to provide for the distribution of such fines and forfeitures after collection.

The specific language in Article 38, § 1 that the court relied on is in the first sentence of the section, which reads as follows:

When any fine or penalty is imposed by any act of Assembly of this State or by any ordinance of any incorporated city or town in this State enacted in pursuance of sufficient authority, for the doing of any act forbidden to be done by such act of Assembly or ordinance, or for omitting to do any act required to be done by such act of Assembly or ordinance, the doing of such act or the omission to do such act shall be deemed to be a criminal offense unless the offense is defined as a municipal infraction.

That language, or the essence of it, was added to the Fines and Forfeitures article of the Maryland Code by Chapter 211 of the Acts of 1880, and has remained in the first section of the Fines and Forfeitures article of the Code, without any substantive change, since then. As of 1880, then, Maryland law recognized two classifications of fines for doing acts prohibited by either statute or ordinance or for omitting to do acts required by either statute or ordinance: criminal offenses and non-criminal municipal infractions. There is now a third category of fines unknown to the law in 1880—civil fines, legislatively authorized penalties that may be imposed by administrative boards, commissions, or agencies as a means of enforcing administrative rules and regulations. Classic examples of such civil fines that can be imposed by administrative bodies for violations of administrative rules and regulations (and that may also be criminal offenses) are contained in Md.Code (1957, 1996 Repl.Vol.), Article 2B (ALCOHOLIC BEVERAGES). Various subsections of § 16–507 of Article 2B authorize the boards of alcoholic beverages license commissioners of Annapolis, Baltimore City, and twenty of the twenty-three counties of this State to suspend or revoke licenses for violation of any ordinances, rules, or regulations that is a cause for revocation or suspension under the alcoholic bever-

age laws affecting that city or county and to impose a fine (varying in severity from $100, for a first offense in Kent County, to $20,000 in Montgomery County) either in lieu of or in addition to suspension of a license. Quite frequently, such fines are imposed for selling an alcoholic beverage to a minor, which is a criminal offense throughout this State.

The Maryland Racing Commission is empowered to make rules and regulations for the operation of race tracks in this State. The Racing Commission adopted a regulation authorizing it to impose fines, not to exceed $5,000, for violations of its regulations. In *Lussier v. Maryland Racing Commission*, 343 Md. 681, 684 A.2d 804 (1996), the Court of Appeals upheld the Racing Commission's imposition of a $5,000 fine on a license owner for violating certain regulations adopted by the Commission. Obviously, that $5,000 fine, imposed by an administrative body for violation of a regulation adopted by that body, pursuant to its own regulation authorizing it to impose fines, was a civil penalty; administrative agencies cannot create criminal offenses.

In this case, the circuit court recognized that a civil fine would not come within the purview of Article 38, § 1 despite the language of that statute, which states that any conduct not defined as a municipal infraction, for which a fine is imposed by statute or ordinance, is a criminal offense. Nevertheless, it concluded that fines imposed pursuant to Article 27, § 255C(r) are criminal sanctions because the statute did not expressly state that such fines are civil penalties.[2] That conclusion, we hold, was erroneous. None of the analogous statutory provisions within Article 2B, § 16–507, authorizing boards of alcoholic beverage license commissioners to impose fines in conjunction with their authority to suspend or revoke licenses, refers to such fines as "civil fines" or "civil penalties," but they undoubtedly are, and the imposition of fines by such boards have been judicially upheld. *See, e.g.,*

---

**2.** Now it does. By Chapter 663 of the Acts of 1966, the General Assembly specifically designated the fines authorized by subsection (r) (now subsection (s)) of § 255C as "civil fines."

*Hoyle v. Board of Liquor License Commissioners for Baltimore City,* 115 Md.App. 124, 692 A.2d 1 (1997), in which this Court affirmed a judgment of the Circuit Court for Baltimore City that affirmed a decision of the Boards of Liquor License Commissioners of Baltimore City imposing a $500 fine on licenses for violation of the Board's Rule 4.01(a), which prohibits sales of alcoholic beverages to minors, a dereliction that is a criminal offense as well as a violation of the administrative regulation.

Article 27, § 297 of the Maryland Code provides for forfeiture of various types of property, real as well as personal, associated with drug trafficking, including motor vehicles, vessels, aircraft, or other types of conveyances "used or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of specified contraband, in the nature of illegal controlled dangerous substances and paraphernalia. Obviously, such forfeiture of property is punitive in effect; nevertheless, despite the fact that the statute nowhere refers to such forfeitures as "civil" penalties, courts have not hesitated to find them to be so. *See Allen v. State,* 91 Md.App. 775, 783–85, 605 A.2d 994 (1992), and the cases cited therein.

As explained in *Allen v. State, supra,* whether a sanction is civil or criminal is basically a matter of legislative intent and the nature of the statutory scheme or effect.

A myriad of tests have been espoused to determine whether a sanction is civil or criminal in nature, but the common thread is the statute's legislative intent and its statutory scheme or effect. *See [United States v.] One Assortment [of 89 Firearms],* 465 U.S. [354] at 362–63, 104 S.Ct. [1099] at 1104–05 [79 L.Ed.2d 361 (1984)]; *Kennedy v. Mendoza–Martinez,* 371 [372] U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963); *Trop v. Dulles,* 356 U.S. 86, 95–96, 78 S.Ct. 590, 595–596, 2 L.Ed.2d 630 (1958). Judge Wilner, now Chief Judge, discussing the various standards in determining the civil or criminal aspects of a statute, stated, "In essence, they express the same thought: What was the paramount legislative intent; what is its paramount

effect?" *Anderson v. Dep't of Health & Mental Hygiene*, 64 Md.App. 674, 691, 498 A.2d 679 (1985), *rev'd on other grounds*, 310 Md. 217, 528 A.2d 904 (1987), *cert. denied sub. nom, Maryland v. Anderson*, 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988).

"[I]f [the statute] is to accomplish 'some other legitimate governmental purpose,' it is likely not punitive or penal, despite the incidental imposition of some disability." *Anderson*, 64 Md.App. at 691, 498 A.2d 679.

*Allen*, 91 Md.App. at 785–86, 605 A.2d 994. *See also United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (Whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction.).

The legislative intent in enacting Article 27, § 255C was to permit or authorize, within Washington County, a specific form of an activity that would otherwise be prohibited as criminal—gambling by means of devices known as "tip jars"— but to control that activity by means of licensing under the supervision of an administrative body with the power to adopt rules and regulations governing the tolerated activity. Subsection (r) of § 255C as it existed at the time this case arose (now subsection (s) with the adjective "civil" inserted to modify the noun "fine") was clearly intended to enable the administrative body to enforce the governing regulations by imposing sanctions for violations of them. Those sanctions include the denial of an application for a license and the suspension or revocation of a license that had been issued. Such sanctions are unquestionably remedial and therefore civil, rather than punitive and criminal, in nature. *See State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995), holding that suspension of a driver's license by the Motor Vehicle Administration was a civil sanction for remedial purposes and was not punishment within the constitutional protection against double jeopardy. The discretionary authority conferred on the agency to "discipline" a holder of a license by imposing a fine not exceeding $1,500 for a first offense in addition to suspending the license for a first offense and a fine not exceeding $5,000 in addition to revoking the license for a second offense is also clearly intended to be

for the same remedial purpose as is the authority to suspend or revoke the license.

We may also glean the legislative intent from the procedure established for suspension and revocation of tip jar licenses and imposition of fines on licenses. That the fines as well as license suspension and revocation were intended to be civil rather than criminal is apparent from the fact that the fines are to be imposed by an administrative agency rather than a court and the fact that the hearing guaranteed to the licensee before sanctions can be imposed is before the Board of County Commissioners under the procedures prescribed by the Administrative Procedure Act, particularly the "preponderance of evidence" standard of proof. Furthermore, the fines that can be imposed under former subsection (r) (now subsection (s)) are credited to the general fund of Washington County; under Article 38, §§ 2 and 5, there are different provisions for the distribution of criminal fines when collected.

The scheme of disciplinary enforcement, by fine or suspension or revocation of license, imposed by an administrative body applying procedural rules and a standard of proof utterly inconsistent with criminal prosecutions, clearly indicate that the fines that could be imposed under § 255C(r) (now § 255C(s)) are civil rather than criminal fines. Therefore, they do no come under the purview of Article 38 § 1 of the Maryland Code. The court erred in declaring that the threatened fines, by virtue of Article 38 § 1, were criminal fines and that, therefore, the District Court had original and exclusive jurisdiction.

■■ The court also erred in holding that the preponderance of evidence standard as set forth in the Administrative Procedure Act and Rule 1–111(b) of the Gaming Commission are in violation of appellee's due process rights and are, therefore, unconstitutional. Proof beyond a reasonable doubt is required only in criminal cases, not in civil proceedings, even though such proceedings may incidentally impose a penalty. *United States v. Regan*, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914).

Appellee argues that, by virtue of subsection (u) of § 255C as it existed prior to the 1996 amendment, any violation of any provision in Article 27 § 255C was a misdemeanor punishable by a fine.[3] Appellants contended that the statutory language "a person who violates this section is guilty of a misdemeanor" was obviously a mistake and that the General Assembly really meant "this subsection" rather than "this section." The circuit court apparently accepted appellants' argument on that point, based primarily on the difference in penalties under then subsection (r). In view of the 1996 amendment, it appears that the General Assembly actually meant "section." The statute was amended to make it clear that the fines that the administrative body is authorized to assess along with suspensions or revocations of licenses are *civil* fines, but the current subsection (v)(4) now reads, in pertinent part:

Except for a violation under subsection (r) of this section, a person who violates this section is guilty of a misdemeanor. . . .

■ For purposes of this case, whether violations of any provision of § 255 C (prior to the 1996 amendment) or only violations of the provisions of then subsection (u) were misdemeanors is irrelevant. The fines authorized by then subsection (r) were *civil* fines that could be imposed by the administrative body after a hearing conducted under rules of civil procedure with the "preponderance of evidence" standard of proof even if the same conduct could also be prosecuted criminally. There is no constitutional prohibition against the imposition of both civil and criminal sanctions for the same conduct. As the Supreme Court pointed out in *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938): "Congress may impose both a criminal and civil sanction in respect to the same act or omission." So may the States, of course. Maryland has expressly done so in such

---

3. As of the time this case began, the maximum criminal fine was $1,000, which was less than the maximum civil fine of $1,500 for a first offense and $5,000 for a subsequent offense. The maximum criminal penalty is now $5,000 for a first offense and $10,000 for a subsequent offense.

remedial legislation as, for example, the Consumer Protection Act (Md.Code (1975, 1990 Repl.Vol.), §§ 13–410 (civil penalty) and 13–411 (criminal penalties) of the Commercial Law Article and the Maryland Home Improvement Law, (Md.Code (1992), §§ 8–620 (civil penalties) and 8–613 (general criminal penalty) of the Business Regulation Article)). It has implicitly done so in Article 27, § 255C.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.