982 A.2d 830

**Ralph Coleman BROWN, Jr.**

v.

**HANDGUN PERMIT REVIEW BOARD.**

**No. 2511, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Oct. 28, 2009.

**456**

458

---

Walter S. Booth, Bethesda, for Appellant.

Mark H. Bowen (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: SALMON, MEREDITH and RAYMOND G. THIEME JR., (Retired, specially assigned), JJ.

MEREDITH, J.

The Maryland State Police ("MSP") denied the application of Ralph Coleman Brown, Jr., appellant, to renew his permit to carry, wear, or transport a handgun. Initially, the MSP informed Brown by letter that his application was denied due to his "propensity for instability." But, at an informal review of the decision to deny, the MSP informed Brown in person that the real reason was his 1984 conviction in the District of Columbia for possession of a dangerous weapon. That misdemeanor offense carried a maximum sentence of one year of imprisonment in the District of Columbia. Brown was sentenced to probation.

Despite the fact that Brown had not been sentenced to imprisonment, the MSP took the position that Brown had been convicted of an offense that constitutes a "disqualifying crime" as defined by Maryland Code (2003), Public Safety Article ("PS"), § 5–101(g)(3), and he is therefore ineligible under PS § 5–133(b)(1) to possess a handgun. The MSP reached this conclusion by relying upon a recently issued opinion from the Maryland Attorney General, 91 Op. Att'y Gen. 68, 80 (Md. 2006), that had concluded:

> The phrase "disqualifying crime" includes out-of-State offenses, as well as those committed in Maryland. An offense in another state that would be classified as a misdemeanor in Maryland with a potential penalty under Maryland law in excess of two years imprisonment falls within that definition. Thus, an individual who has been convicted of such an offense may not possess a regulated firearm in Maryland.

Applying the analysis set forth in 91 Op. Att'y Gen. 68, the MSP reasoned that the D.C. crime of possession of a dangerous weapon is equivalent to the Maryland crime of wearing or carrying a dangerous weapon, a misdemeanor which is punishable in Maryland by imprisonment of up to three years, and, for that reason, is clearly a disqualifying crime within the meaning of PS § 5–101(g)(3).

Brown appealed to the Handgun Permit Review Board ("the Board"), appellee, which adopted the reasoning of the MSP and affirmed the denial of Brown's permit application. Brown then petitioned for judicial review in the Circuit Court for Frederick County. The circuit court affirmed the Board's denial of the permit application.

On appeal to this Court, Brown presents four questions, which he phrased as follows:

1 [ ]. Is Attorney General's Opinion, 91 Op. Atty. Gen. 68, unconstitutional, unenforceable, and in conflict with federal law? Additionally, is the MSP, H[P]RB, and Circuit Court for Frederick Cou[nty]'s reliance upon this A.G. Opinion misplaced as a result, since the Opinion holds that a person can be disqualified from possessing a firearm because Maryland law enforcement personnel may apply the Maryland penalty to a misdemeanor conviction from another jurisdiction, and further, that Maryland may apply the penalty as it is at the current time, not as it was at the time of the offense to any prior conviction?

[2]. Is the Attorney General's Opinion, 91 Op. Atty. Gen. 68, in conflict with Maryland Law, wherein it would render all guilty pleas null and void because they would no longer be "knowing and voluntary" since the penalty for the offense could change at any moment and be applied to the prior conviction?

3. If this Court finds the Attorney General's Opinion, 91 Op. Atty. [Gen.] 68, to be valid and good law, is the Maryland offense of "wearing and carrying" with intent to injure the equivalent offense to the D.C. offense of "possession" of a prohibited weapon?

4. Was Mr. Brown denied appropriate procedural due process, as required under the Administrative Procedures Act, Maryland Law, and the Maryland Declaration of Rights, when the formal written notice apprising him of the reason for which he was denied did not use the same reason as stated at his informal review and is not the same as the reason stated at his HPRB hearing in this matter?

With respect to the first three questions, we note that the Attorney General's opinion itself is not the direct object of our judicial review. Rather, it is the ruling of the Board that we are called upon to review. Nevertheless, we conclude that a fair reading of Brown's first three questions, when considered together, is: (1) whether the Board made an error of law by adopting the legal analysis set forth in 91 Op. Att'y. Gen. 68, and, (2) if not, whether the Board erred in concluding that Brown was convicted of a misdemeanor in the District of Columbia for which the equivalent Maryland offense carries a potential statutory penalty of more than two years. We conclude that the Board did not err in either determination. Further, we answer "no" to Brown's fourth question. Accordingly, we affirm the judgment of the circuit court, which affirmed the ruling of the Board.

## FACTS AND PROCEDURAL HISTORY

Maryland law requires a permit to carry, wear, or transport a handgun. PS § 5–303. Pursuant to PS § 5–306(a), if the applicant is not under the age of 30, the Secretary of the MSP

shall issue a permit within a reasonable time to a person who the Secretary finds:

(1) is an adult;

(2) (i) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed; or

(ii) if convicted of a crime described in item (i) of this item, has been pardoned or has been granted relief under 18 U.S.C. § 925(c);

(3) has not been convicted of a crime involving the possession, use, or distribution of a controlled dangerous substance;

(4) is not presently an alcoholic, addict, or habitual user of a controlled dangerous substance unless the habitual use of the controlled dangerous substance is under legitimate medical direction; and

(5) based on an investigation:

(i) has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another; and (ii) has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.[1]

The permit expires two years after issuance, but may be renewed for successive three year periods "if, at the time of an application for renewal, the applicant possesses the qualifications for the issuance of a permit and pays the renewal fee...." PS § 5–309. If the MSP denies a permit application, the applicant is entitled to an informal review by the MSP pursuant to PS § 5–311. And if the informal review does not resolve the dispute, the applicant may request a review by the Board pursuant to PS § 5–312. The Board may receive and consider additional evidence, and may either "sustain, reverse, or modify the decision of the Secretary" of the MSP. PS § 5–312(d)(2) provides: "If the action by the Board results in the denial of a permit or renewal of a permit or the revocation or limitation of a permit, the Board shall submit in writing to the applicant or the holder of the permit the reasons for the action taken by the Board."

In 1997, Brown first obtained a handgun permit. Over the course of the following years, he successfully renewed that permit twice. Handgun permit applicants must disclose any crimes of which they have been convicted. On each of his applications, Brown noted that, as a result of a November

---

1. As we explain more fully herein, PS § 5–133(b)(1) prohibits a person from possessing a "regulated firearm," which includes a handgun, if the person "has been convicted of a disqualifying crime." The phrase "disqualifying crime" is defined in PS § 5–101(g). Although the verbiage describing persons entitled to a handgun permit in PS § 5–306 does not match the language used in PS § 5–133(b)(1) to describe persons who may not legally possess a firearm, we have no reason to believe that the General Assembly intended to require the issuance of handgun permits to individuals who, pursuant to PS § 5–133(b), could not legally possess a firearm. Indeed, Brown has never made such an argument.

1983 incident, he had been convicted of possession of a prohibited weapon in January 1984, in the District of Columbia. D.C.Code § 22–3214 (1981) (recodified at D.C.Code § 22–4514 (2008)).[2] At the time of Brown's conviction, as today, that crime was a misdemeanor under D.C. law, punishable by up to one year in prison. D.C.Code §§ 22–3214(c), 22–3215 (recodified at D.C.Code § 22–4515 (2008)); *see Henson v. United States,* 399 A.2d 16, 20 (D.C.1979) ("Largely for historical reasons, the courts in this jurisdiction generally define 'felony' as any offense for which the maximum penalty provided for the offense is imprisonment for more than one year; generally, all other crimes are misdemeanors.").

PS § 5–133(b) states: "A person may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime . . . ." "Regulated firearms" are a class of firearms that includes handguns. PS § 5–101(p). PS § 5–101(g) defines a "disqualifying crime" as "(1) a crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." [3]

---

**2.** D.C.Code § 22–3214 states:
> (a) No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slungshot [sic], sand club, sandbag, switchblade knife, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms . . . .
> (b) No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon.

**3.** In addition to PS § 5–133(b)(1), the term "disqualifying crime" appears in PS §§ 5–107(b)(4)(iii) (requiring that an applicant for a firearms dealer's license attest that he has never been convicted of a disqualifying crime), 5–114(b)(2)(i) (revoking the license of a dealer convicted of a disqualifying crime), 5–118(b)(3)(ii) (requiring that a purchaser of a regulated firearm attest that he has never been convicted of a disqualifying crime), 5–133(b)(9) (prohibiting possession of a regulated firearm by any person adjudicated delinquent for an act that would be a disqualifying crime if committed by an adult), and PS §§ 5–

Before the spring of 2006, the MSP had interpreted PS § 5–101(g)(3)—and its statutory predecessors—such that Brown's D.C. conviction was not a disqualifying crime. The MSP's position with respect to Brown's D.C. conviction changed after the Maryland Attorney General issued an opinion on March 27, 2006, interpreting PS § 5–101(g)(3). 91 Op. Att'y Gen. 68 (Md.2006). In response to an inquiry from the Superintendent of the MSP, the Attorney General opined that, when the MSP applies PS § 5–101(g)(3) to an out-of-state conviction, the agency should examine the equivalent Maryland offense that exists at present (rather than the equivalent extant at the time of the conviction). It was the Attorney General's opinion that, if the Maryland equivalent is a misdemeanor that carries a potential penalty in Maryland of more than two years' imprisonment, then, under Maryland's firearms statutes, the person has been convicted of a disqualifying crime, and cannot legally possess a regulated firearm. *Id.* at 68.

Two months after the Attorney General's opinion was published, on May 25, 2006, Brown applied for the third renewal of his handgun permit. Once again, he listed his D.C. conviction on his permit application. He handwrote the following explanation:

11/83 Possession of a prohibited weapon (pipe)

D.C. Superior Court ·

Got into an altercation with another male. I received probation (unsupervised)

This information was on my original application

On June 5, 2006, the MSP sent Brown a letter informing him that his application had been denied because he "[e]xhibited a propensity for instability." The letter further informed Brown that he could request that the MSP conduct an informal review of the denial.

---

134(b)(2) and (b)(11) (prohibiting conveyance of a regulated firearm to any person ineligible to possess one under PS §§ 5–133(b)(1) or (b)(9), respectively).

Brown did request an informal review, which took place on June 7, 2006. At the informal review, the MSP informed Brown in person (although it never has done so by written notice) that the actual reason for the denial was the MSP's determination that his 1984 conviction was for a disqualifying crime that rendered him ineligible, under PS § 5–133(b)(1), to possess a handgun. Adopting the Attorney General's interpretation of PS § 5–101(g)(3), the MSP concluded that the Maryland equivalent of D.C.Code § 22–3214 is Maryland Code (2002), Criminal Law Article ("CR"), § 4–101(c)(2), which forbids wearing or carrying a dangerous weapon with intent to injure.[4] Under CR § 4–101(d)(1), the Maryland offense is a misdemeanor punishable by up to three years in prison. Accordingly, the MSP found that Brown had been convicted of a disqualifying crime. At the conclusion of the informal review, the MSP affirmed its denial of Brown's application.

Brown sought review of the MSP's decision by the Handgun Permit Review Board, which held a hearing on the matter of Brown's application on October 4, 2006. At the hearing, Brown and an MSP officer who had reviewed the permit application testified. On October 25, 2006, the Board issued its final decision and order, that concluded as follows:

### Findings of Fact

The Board finds the applicant pled guilty to and was charged with possession of a prohibited weapon in Washington D.C. on January 6, 1984. The Board finds that the Maryland equivalent of possession of a prohibited weapon is a misdemeanor that could carry a sentence of imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.

### Conclusions of Law

Based upon its findings of fact, the Board concludes, based on the Attorney General's opinion regarding the

---

**4.** CR § 4–101(c)(2) states: "A person may not wear or carry a dangerous weapon, chemical mace, pepper mace, or a tear gas device openly with the intent or purpose of injuring an individual in an unlawful manner."

conversion of out-of-state crimes to Maryland crimes that the applicant pled guilty and was charged with possession of a prohibited weapon in the District of Columbia; the Maryland equivalent to possession of prohibiting [sic] weapon is stated under Section 4–101(c)(2) of the Criminal Law, Annotated Code of Maryland—a person may not wear or carry a dangerous weapon. Section 4–101(d)(1) states a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.... Therefore this conviction would prohibit the applicant from possessing a firearm pursuant to Section 5–133(b)(1) of the Public Safety Article, Annotated Code of Maryland—a person may not possess a regulated firearm if the person has been convicted of a disqualifying crime. Under 5–101(g)(3) a disqualifying crime means a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

The Board affirmed the denial of Brown's permit by a vote of three to zero. Two Board members abstained, expressing their concern that the Attorney General's definition of a "disqualifying crime" under PS § 5–133(b)(1) could be, as Brown alleged, in conflict with federal firearms law.

Brown next petitioned for judicial review in the Circuit Court for Frederick County, pursuant to Maryland Rule 7–202 (2008), and PS § 5–312(e). The circuit court affirmed the Board's decision. Brown filed a timely notice of appeal to this Court.

## DISCUSSION

### I. *Appellate Review of the Board's Ruling*

The standard for appellate review of a ruling of an administrative agency was described as follows in *Comptroller v. Science Applications*, 405 Md. 185, 192–93, 950 A.2d 766 (2008) (footnote omitted):

When reviewing the decision of an administrative agency, ... we review the agency's decision directly, not the decision of the circuit court. *Anderson v. General Casualty,*

402 Md. 236, 244, 935 A.2d 746, 751 (2007). A reviewing court will affirm the decision of the [agency] when it is supported by substantial evidence appearing in the record and it is not erroneous as a matter of law. *Comptroller v. Blanton,* 390 Md. 528, 535, 890 A.2d 279, 283 (2006); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1300–01 (1985). Because an agency's decision is presumed *prima facie* correct, we review the evidence in the light most favorable to the agency. *Comptroller v. Citicorp,* 389 Md. 156, 163, 884 A.2d 112, 116 (2005). Indeed, "it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences." *Id.* at 163–64, 884 A.2d at 116 (quoting *Ramsay,* 302 Md. at 835, 490 A.2d at 1301). When we review an agency decision that is a mixed question of law and fact, we apply "the substantial evidence test, that is, the same standard of review [we] would apply to an agency factual finding." *Longshore v. State,* 399 Md. 486, 522 n. 8, 924 A.2d 1129, 1149 n. 8 (2007).

We review questions of law *de novo,* although we give weight to an agency's interpretation of a statute it is charged with enforcing where the interpretation is longstanding and falls within the agency's area of expertise. *Colburn v. Dept. of Correctional Services,* 403 Md. 115, 128, 939 A.2d 716 (2008) (citing *Schwartz v. DNR,* 385 Md. 534, 554, 870 A.2d 168 (2005)); *see Opert v. Criminal Injuries,* 403 Md. 587, 604 n. 8, 943 A.2d 1229 (2008) ("Because this appears to be a case of first impression, we discern no long-standing or consistent practice by the Criminal Injuries Compensation Board to which particular deference would be due.").

In this case, we decline to give significant weight to the Board's present interpretation of PS § 5–101(g)(3). The fact that Brown had been issued three previous handgun permits demonstrates that the Board's present interpretation is not "long-standing." Indeed, the transcript of Brown's hearing before the Board suggests that his case may be the first time

the Board had applied an interpretation of PS § 5–101(g)(3) in accordance with 91 Op. Att'y Gen. 68.

With respect to matters of statutory interpretation, the Court of Appeals said in *Opert, supra,* 403 Md. at 593, 943 A.2d 1229:

> The overarching rule is that, in construing statutes, "our primary goal is always 'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision . . .' " *Barbre v. Pope,* 402 Md. 157, 172, 935 A.2d 699, 708 (2007), citing *Dep't of Health v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007), and *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). If the language is clear and unambiguous, we ordinarily "need not look beyond the statute's provisions and our analysis ends." *Barbre, supra,* 402 Md. at 173, 935 A.2d at 709.
>
> If, upon this preliminary analysis, however, we conclude that "the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Barbre, supra,* 402 Md. at 173, 935 A.2d at 709; *Patterson Park v. Teachers Union,* 399 Md. 174, 198, 923 A.2d 60, 74 (2007). To the extent relevant, we look as well to "the statute's structure, including the title, and how the statute relates to other laws." *Stouffer v. Pearson,* 390 Md. 36, 46, 887 A.2d 623, 629 (2005).

Additionally, "a statute will be construed so as to avoid a conflict with the Constitution whenever that course is reasonably possible." *Koshko v. Haining,* 398 Md. 404, 425, 921 A.2d 171 (2007) (quoting *In re James D.,* 295 Md. 314, 327, 455 A.2d 966 (1983)).

## II. *Notice*

At the outset, we dispose of Brown's fourth question, in which he raises a claim of denial of procedural due process. Brown contends that the MSP violated § 10–207(b) of Md. Code (1984, 2004 Repl.Vol.), State Government Article ("SG")—which requires that an agency give reasonable notice of the facts underlying its decisions—by falsely notifying him

by letter that his permit application was denied due to a "propensity for instability." Brown also contends that the MSP's failure to notify him in writing of the true reason for denial of his application violated his constitutional right to due process under the Fourteenth Amendment of the U.S. Constitution and Art. 24 of the Maryland Constitution.

The Board acknowledges in its brief that the written notice of denial provided to Brown by the MSP "did not state the actual basis for the disapproval of his application," "did not cite any facts in support of the violations alleged, and misstated the reason for disapproval." But the Board counters, and Brown does not dispute, that the MSP provided Brown actual notice of the real reason for the permit denial at the informal MSP hearing, approximately four months prior to the Board's hearing. The Board contends, therefore, that Brown had adequate notice of the reason for denial of his application prior to the Board's hearing, such that he was not prejudiced, and there was no denial of due process.

■ In other contexts, it has been held that actual notice compensates for a failure to provide notice as required by statute, unless the statute prescribes a sanction for the violation (which SG § 10–207 does not). *See, e.g., State v. Barnes,* 273 Md. 195, 210, 328 A.2d 737 (1974); *see also Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 467–70, 597 A.2d 939 (1991) (allowing agency's disciplinary action to proceed despite untimeliness where statute did not prescribe a sanction and there was no demonstrated prejudice); *cf. Gorge v. State,* 386 Md. 600, 614–15, 873 A.2d 1171 (2005) (sentence of life without parole unavailable where State gave actual but not written notice as required by CR § 2–203). Other cases have held that there was no independent violation of the constitutional right to due process where there was actual notice. *Dept. of Education v. Shoop,* 119 Md.App. 181, 204, 704 A.2d 499 (1998) (citing *Barnes, supra,* 273 Md. at 210, 328 A.2d 737, and *Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687 (1966)).

■ Although actual notice must sufficiently precede the hearing that follows in order for the notice to satisfy due process concerns, *see Casey v. Rockville,* 400 Md. 259, 319, 929

A.2d 74 (2007) ("due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner'") (quoting *Pitsenberger v. Pitsenberger*, 287 Md. 20, 30, 410 A.2d 1052 (1980)), and Brown did not receive notice of the reason for denial of his application in time to effectively prepare for the informal review before the MSP, he did receive actual notice four months prior to his hearing before the Board. The Board is authorized to receive additional evidence. It reviews the MSP's decision *de novo*, and has final say over a permit application. Accordingly, Brown had sufficient notice to provide him due process and negate any prejudice resulting from the failure of the MSP to advise him in writing of the reason it denied his application. Therefore, the error by the MSP provides no basis for vacating the Board's decision.

### III. A. *Application of PS § 5–133(b)(1) to Handgun Permits*

Before reaching the remainder of Brown's arguments, we note that there is a discrepancy between the statutory definition in PS § 5–101(g) of a "disqualifying crime" that precludes a person from legally purchasing or possessing a regulated firearm in Maryland and the statutory standards in PS § 5–306 pertaining to issuance of a handgun permit.[5] The disqualifying convictions described in PS § 5–306(a)(2) and (3) are: "a felony or . . . misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed," and "a crime

---

5. As noted above, PS § 5–306(a) states:
 In general.—Subject to subsection (b) of this section, the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds:
 (1) is an adult;
 (2) (i) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed; or
 (ii) if convicted of a crime described in item (i) of this item, has been pardoned or has been granted relief under 18 U.S.C. § 925(c);
 (3) has not been convicted of a crime involving the possession, use, or distribution of a controlled dangerous substance;
 (4) is not presently an alcoholic, addict, or habitual user of a controlled dangerous substance unless the habitual use of the con-

involving the possession, use, or distribution of a controlled dangerous substance." Neither of those disqualifications applies to Brown.

Nevertheless, Brown has not argued that PS § 5–306 requires the MSP to issue a handgun permit to a person who, under PS § 5–133(b)(1), may not legally possess a handgun because of having committed a disqualifying crime. And it would produce an absurd result to construe PS § 5–306(a) to require the issuance of a handgun permit to a person ineligible to possess a handgun. Accordingly, we shall assume *arguendo* that the Board may properly deny a handgun permit to anyone who has committed a disqualifying crime under PS § 5–101(g) and is prohibited from possessing a handgun under PS § 5–133(b)(1).

### B. Which State's Maximum Penalty Should Determine Whether An Applicant's Conviction was for a Disqualifying Crime?

Brown contends that the question of whether an out-of-state conviction is a disqualifying crime under PS § 5–101(g)(3) should be determined by looking to the maximum punishment for the offense in the convicting jurisdiction, not the punishment available under the equivalent Maryland offense. Brown asserts that, because the maximum penalty for his offense in D.C. was (and is) only one year in prison, the Board erred in concluding that he had been convicted of a disqualifying crime under PS § 5–101(g)(3).

Brown argues that the Attorney General's interpretation of PS § 5–101(g)(3)—adopted by the Board—is wrong. He asserts that it is impractical to apply. Brown further argues the

---

trolled dangerous substance is under legitimate medical direction; and

(5) based on an investigation:

(i) has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another; and

(ii) has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.

Attorney General's interpretation is contrary to the generally accepted interpretation of a similar federal law and therefore violates the Supremacy Clause, Art. VI, clause 2 of the U.S. Constitution, and Art. 2 of the Maryland Declaration of Rights. Finally, Brown argues the interpretation would violate the Full Faith and Credit Clause, Art. IV, clause 1 of the U.S. Constitution.[6]

We first explain why the Attorney General's interpretation—as adopted and applied by the Board—is a correct reading of PS § 5–101(g)(3). We then explain why that interpretation does not run afoul of either federal law or the Full Faith and Credit Clause.

## 1. *Statutory Text and Legislative History*

In *Wyatt v. State*, 169 Md.App. 394, 402–03, 901 A.2d 271 (2006), we were called upon to construe PS § 5–101(g)(3). We

---

6. Brown made no argument, either before the Board or in this Court, that suggested the Maryland statutes impinge upon his Second Amendment right to keep and bear arms.

 In *District of Columbia v. Heller*, —— U.S. ——, 128 S.Ct. 2783, 2816–17, 171 L.Ed.2d 637 (2008), the Supreme Court observed:

 > Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes.... Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

 (Footnote omitted.) The Court noted that the above "list [of permissible restrictions] does not purport to be exhaustive." *Id.*, 128 S.Ct. at 2817 n. 26. *See also United States v. Hayes*, —— U.S. ——, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (interpreting federal statute that prohibits possession of firearms by a person who has been convicted of a misdemeanor crime of domestic violence); *Scherr v. Handgun Review*, 163 Md.App. 417, 440–43, 880 A.2d 1137 (2005) (quoting *Presser v. Illinois*, 116 U.S. 252, 264, 6 S.Ct. 580, 29 L.Ed. 615 (1886), recognizing that the Second Amendment restricts only the national government).

reviewed the phrase "carries a statutory penalty of," and concluded that that statutory language was not ambiguous with respect to the issue raised in that case. Nevertheless, as the Court of Appeals noted in *Collins v. State*, 383 Md. 684, 689, 861 A.2d 727 (2004), " '[s]tatutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear.' " (Quoting *Gardner v. State*, 344 Md. 642, 648, 689 A.2d 610 (1997).) Because the language the General Assembly chose to describe disqualifying misdemeanors in PS § 5–101(g)(3) can support more than one possible interpretation, the phrase is ambiguous with respect to which state's penalty is the proper measure.

At the outset of its analysis of PS § 5–101(g)(3), the Attorney General's opinion identified several possible interpretations, 91 Op. Att'y Gen. at 70–71:

> As indicated above, [PS § 5–101(g)(3) ] defines "disqualifying crime" to include "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than two years." You ask whether this provision encompasses out-of-State misdemeanor convictions that would carry a maximum penalty of at least two years if committed in Maryland.
>
> * * *
>
> The literal language of the statute is not dispositive of your question as there are potentially several ways to interpret it. First, it could be construed to describe only Maryland convictions. In that case, the answer to your question would be simple: an out-of-State conviction would never be a disqualifying crime under this provision.
>
> Second, the phrase could be construed to include out-of-State convictions—specifically, certain convictions for offenses that would be "classified as a misdemeanor in the State" if committed in Maryland. However, there remains some ambiguity as to the universe of such offenses that are disqualifying crimes under this interpretation. On the one hand, the language could encompass only those out-of-State

offenses that would be classified as misdemeanors in Maryland and that carry a penalty in excess of two years under the law of the state of conviction. Under that view, the benchmark is the potential penalty in the other state. *Cf., e.g., State v. Langlands*, 276 Ga. 721, 583 S.E.2d 18, 19–22 (2003) (construing Georgia felon-in-possession statute not to encompass Pennsylvania manslaughter conviction classified as a misdemeanor in Pennsylvania). Alternatively, it could include any out-of-State offense that would be classified as a misdemeanor if committed in Maryland and that would carry a maximum sentence in excess of two years if committed in Maryland, regardless of the sentence that the other state has designated for the offense. *Cf., e.g., State v. Pollard*, 273 Kan. 706, 44 P.3d 1261 (2002) (construing Kansas felon-in-possession law to be triggered by a Missouri disposition involving probation before imposition of sentence, even though such a disposition is not considered a conviction under Missouri law).

To resolve these interpretive issues, it is helpful to review the legislative history of PS § 5–101(g)(3) and, for reasons that shall become apparent, an analogous federal law.

The Attorney General noted that Maryland enacted a statute in 1941 that made it illegal to sell a handgun to a person who had been convicted of a crime of violence. According to the Attorney General, the legislative evolution of the current statutes that disqualify certain persons from possessing firearms began with that enactment, *id.* at 73–76:

The precursor of PS § 5–133 was enacted in 1941. Chapter 622, Laws of Maryland 1941, *then codified at* Article 27, § 531D. That law made it illegal to sell or otherwise transfer a handgun to a person who "has been convicted of a crime of violence . . ." *Id.* It was "intended to prevent those who have already demonstrated a propensity for violence, as evidenced by a conviction of a crime of violence, from possessing handguns." *Johnson v. State*, 67 Md.App. 347, 378, 507 A.2d 1134, *cert. denied*, 307 Md. 260, 513 A.2d 314, *cert. denied*, 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986). The statute defined "crime of violence" by listing

various crimes, without explicitly indicating any limits on the jurisdiction of conviction. The statute also disqualified a "fugitive from justice" from possessing a handgun. It defined "fugitive from justice" to include anyone "who has fled from any State, Territory, or the District of Columbia, or possession of the United States, to avoid prosecution for a crime of violence[.]" This indicates that "crime of violence" was not a phrase confined to Maryland offenses.

In 1966, the firearms law was substantially revised. Chapter 502, Laws of Maryland 1966. Under those amendments, an individual could not purchase a handgun from a firearms dealer unless the purchaser could truthfully attest that he or she had not been convicted "in this State or elsewhere" of a crime of violence or certain firearms crimes. Annotated Code of Maryland, Article 27, § 442(e)(2)(i) (1967 Repl.Vol.). Similarly, in order to obtain a license to deal in firearms, an individual was required to state under penalties of perjury that he or she had not been convicted of the same categories of crimes "in this State or elsewhere." *Id.,* § 443(d)(4)(iii). The statute also made clear that conviction of such a crime "in this State or elsewhere" would result in revocation of the dealer's license. *Id.,* § 443(h)(2).

Over the next three decades, the Legislature amended the statute in other respects, but retained the references to disqualifying convictions "in this State or elsewhere," as well as definitional language that referenced prosecutions for "crime of violence" in other jurisdictions. *See* Annotated Code of Maryland, Article 27, §§ 441(f), 442(f)(2)(i), 443(d)(4)(iii), and 443(h)(2) (1992 Repl.Vol. & 1995 Cum. Supp.). It was thus clear that the disqualification based on a prior conviction for a crime of violence encompassed convictions in other states. This was consistent with the original purpose of the firearms law—to keep regulated firearms out of the hands of those with an established propensity for serious lawbreaking.

In 1996, the statute was amended to apply to assault rifles, as well as handguns, which were collectively defined as "regulated firearms." Chapter 561, § 2; Chapter 562,

§ 2, Laws of Maryland 1996. The law was also revised in other respects. Notably, the range of disqualifying crimes was expanded to include misdemeanor offenses. The 1996 amendments were largely based on the recommendations of the Governor's Commission on Gun Violence ("Commission"). Among other things, the Commission recommended that Maryland law "incorporate federal law 'reasons to deny a handgun' into State law." Governor's Commission on Gun Violence, Comprehensive Reform for a Safer Maryland (November 1, 1995), Recommendation No. 17, p. 20. The Commission explained this recommendation:

> Under federal law, if a person is convicted of any misdemeanor that carries more than a two year term of imprisonment, they are prohibited from owning a firearm. There are approximately 90 misdemeanors in the State of Maryland that trigger this prohibition. Once an individual is convicted of such a misdemeanor, under federal law, she or he may no longer purchase or possess a firearm.

*Id.* In the same vein, an explanatory memo in the legislative file states that the addition of the reference to misdemeanors in what is now part of the definition of "disqualifying crime" was designed to parallel 18 U.S.C. § 921(a)(20). Legislative files for Senate Bill 215, House Bill 297 (1996).

Consistent with the recommendations of the Commission, the General Assembly in 1996 sought to restrict further the categories of convicted individuals who could lawfully possess a regulated firearms. *See* Fiscal Note for House Bill 297 (April 3, 1996) ( ["]This Administration bill ... expands exclusions on who may buy or possess regulated firearms ...."). However, in the course of revising the firearms law to incorporate the misdemeanor disqualification from the federal statute, restate the existing disqualifications, and add to the categories of disqualifying convictions, the Legislature did not include the qualifying phrase "in this State or elsewhere" that had appeared in the prior version of the statute. Conceivably, the absence of that phrase could signal a legislative intent that no out-of-state conviction—whether for a "crime of violence", a felony, or a misdemean-

or—would any longer be a disqualifying conviction under the Maryland firearms law. However, such an interpretation would be completely at odds with the recommendations of the Commission and the stated purposes of the 1996 amendments. Nothing in the legislative file indicates any intention of cutting back on the universe of crimes that would result in a disqualification. *See* Floor Report for Senate Bill 215 (1996) ("This bill is aimed at reducing gun-related violent crime in Maryland [by] ... changes to the current law governing the sale, transfer, and possession of [firearms]"). An interpretation of the statute that completely eliminated out-of-State convictions as disqualifying crimes would be contrary to the "the strong desire to keep firearms away from felons and potentially violent persons" that underlay this law. *See Melton v. State*, 379 Md. 471, 484, 842 A.2d 743 (2004).

In a 2002 amendment, the Legislature directed that the State Police undertake a criminal history records check in connection with applications for firearms dealer licenses and individual handgun permits, specifying a "State and *national* criminal history records check." Chapter 418, Laws of Maryland 2002, *now codified at* PS §§ 5–108(b), 5–305(b) (emphasis added). The specification of a national criminal records check also confirms that the Legislature contemplated that out-of-State convictions would remain within the universe of disqualifying crimes.

(Footnotes omitted.)

■ We agree with the Attorney General's conclusion that the phrase "a violation classified as a misdemeanor in the State" was not intended to limit the disqualifying offenses to only those committed in Maryland. In 1941, the General Assembly first adopted a measure "intended to prevent those who have already demonstrated a propensity for violence ... from possessing handguns," *Johnson v. State*, 67 Md.App. 347, 378, 507 A.2d 1134 (1986), and the legislature never has wavered from that policy. In light of the historical progression of Maryland legislation regulating firearms, it would be totally irrational to interpret the current definition of disquali-

fying crimes to exclude those offenses committed in other states.

As the Attorney General's opinion points out, the expansion of disqualifying crimes to include misdemeanor offenses that are punishable by more than two years' imprisonment occurred in 1996, when the General Assembly tightened restrictions on possession of guns by convicted criminals, enacting 1996 Laws of Maryland, Chapters 561 and 562. As a result of those enactments, when Brown first filed a permit application in 1997, Md.Code (1957, 1996 Repl.Vol.), Article 27, § 445(d)—the forerunner of PS §§ 5–101(g) and 5–133(b)(1)—provided in pertinent part:

(d) *Restrictions on possession—In general.*—A person may not possess a regulated firearm if the person:

(1) Has been convicted of:

(i) A crime of violence;

(ii) Any violation classified as a felony in this State;

(iii) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or

(iv) Any violation classified as a common law offense where the person received a term of imprisonment of more tha[n] 2 years.

The 1996 enactments added similar verbiage about disqualifying misdemeanors to Art. 27, § 442(h)(2)(i)(3) (prescribing the contents of an application to purchase, rent or transfer a firearm); Art. 27, § 445(b)(iii) (prohibiting the conveyance of a firearm to a person convicted of a disqualifying misdemeanor); and Art. 27, §§ 443(d)(4)(iii)3 and 443(i)(2)(iii) (prescribing qualifications for gun dealers).

When the Public Safety Article was first enacted in 2003, the provisions defining disqualifying offenses—such as Art. 27, § 445(d)—were revised, and the General Assembly generated a definition of the phrase "disqualifying crimes," set forth in

PS § 5–101(g), to reduce repetition.[7] The Revisor's Note to PS § 5–101(g) states:

> This subsection is new language derived without substantive change from former Art. 27, § 442(h)(2)(i)1, 2 and 3; § 443(e)(4)(iii)1, 2, and 3 and (j)(2)(i), (ii), and (iii); and § 445(b)(3) and (1)(i), (iii), and, except for reference to conspiracy to commit certain crimes, (ii) and (d)(3) and (1)(i), (ii), and (iii).

> The term "[d]isqualifying crime" is added to avoid the repetition of the phrases "a crime of violence", "any violation classified as a felony in this State", and "any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years".

As part of the recodification process that led to the creation of the Public Safety Article, the provisions formerly set forth in Art. 27, § 445(d)(1), including the prohibition of possession of a firearm by a person who has been convicted of a "violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years," were recodified in PS 5–133(b)(1), which now prohibits possession by a person "convicted of a disqualifying crime." Again, a Revisor's Note stated that the newly recodified section was "new language derived without substantive change from former Art. 27, ... § 445(d)...." *See also Melton v. State*, 379 Md. 471, 488, 842 A.2d 743 (2004).

Although PS § 5–101(g)(3) currently defines "disqualifying crime" to include "*a* violation classified as a misdemeanor in *the* State that carries a statutory penalty of more than 2 years," because there was no intended substantive change from the source language that appeared in the former Art. 27, § 445(d), we interpret the phrase as if it were still worded

---

**7.** For reasons that are not apparent to us, the phrase "disqualifying crimes" was not utilized in the recodified statute governing applications for handgun permits, PS § 5–306. As noted above, however, Brown has not argued that a permit must be issued to an applicant who has been convicted of a misdemeanor that constitutes a "disqualifying crime" under PS § 5–101(g)(3).

"*[a]ny* violation classified as a misdemeanor in *this* State that carries a statutory penalty of more than 2 years." (Emphasis added.) As so interpreted, a disqualifying conviction from another state is any violation that would be classified in Maryland as a misdemeanor that carries a statutory penalty of more than two years.

█ Accordingly, we agree with the opinion expressed by the Attorney General that the General Assembly intended for PS § 5–101(g)(3) to be interpreted such that the conviction's potential punishment is measured by reference to the penalty under the law of Maryland for a comparable violation. As a matter of grammatical construction, we are persuaded that it is most logical to construe the phrase "that carries a statutory penalty of more than 2 years" as modifying "misdemeanor" rather than "violation." The conviction for the violation can be from any state; the disqualification under PS § 5–101(g)(3), however, is only for those violations "classified as a misdemeanor in this State," and within that class of offenses, only those that "carr[y] a statutory penalty of more than 2 years" under Maryland law.

In addition to this interpretation being the most grammatical reading of the statute, we note that it would have been most rational for the General Assembly to use Maryland law as the reference point for the following reasons. First, it ensures that the General Assembly's judgment as to criminal propensity prevails over the judgment of other states' legislatures. *Cf. State v. Menard,* 888 A.2d 57, 61 (R.I.2005) (interpreting Rhode Island's criminal disarmament law to classify prior convictions according to Rhode Island law). As the Attorney General opined, 91 Md. Op. Att'y Gen. at 78: "It seems unlikely that, in defining the universe of disqualifying offenses, the General Assembly meant essentially to defer to the judgment of other states as to whether or not an individual should be able to possess a firearm in Maryland." Second, the use of Maryland law as the standard for disqualification makes equal the treatment by this State of all persons convicted of similar criminal conduct, whether the criminal conduct oc-

curred in Maryland or elsewhere. *Cf. State v. Pollard,* 273 Kan. 706, 44 P.3d 1261, 1264–65 (2002) (interpreting Kansas's criminal disarmament law to classify prior convictions according to Kansas law).

The Court of Appeals observed in *Melton, supra,* 379 Md. at 484–85, 842 A.2d 743, that the gun control enactments in Maryland reflect a "strong desire to keep firearms away from felons and potentially violent persons," and a "goal" of preventing certain prior offenders from "possessing firearms." The Attorney General's interpretation of PS § 5–101(g)(3) better achieves that goal than the interpretation for which Brown argues that would leave it up to other states to determine which of their criminal offenses were sufficiently serious to preclude firearm possession in Maryland.

Brown counters that the Attorney General's interpretation of PS § 5–101(g)(3) is impractical to apply because it may be difficult to determine which Maryland offense, if any, is equivalent to an out-of-state conviction. But this would not be the first Maryland criminal statute to require converting out-of-state convictions to their Maryland equivalents. Such conversion appears necessary to apply CR § 5–622(b)(2), and Maryland's violent crime recidivist statute, CR § 14–101.[8] *See, e.g., Bowman v. State,* 314 Md. 725, 552 A.2d 1303 (1989) (applying precursor statute, Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 643B(c)). The potential difficulty in applying the statute in the manner we have described is not a sufficient reason for us to conclude the General Assembly intended for its words to be otherwise interpreted.

---

**8.** CR § 5–622(b) provides, in pertinent part:

(b) *Prohibited.*—A person may not possess, own, carry, or transport a firearm if that person has been convicted of:

* * *

(2) a crime under the laws of another state or of the United States that would be a felony under this title if committed in this State; CR § 14–101 prescribes a mandatory prison sentence of specified length for the second, third, or fourth conviction for a "crime of violence," a term defined at subsection (a).

## 2. *Federal law*

Brown also argues that the Attorney General's interpretation of PS § 5–101(g)(3) and, by extension, PS § 5–133(b)(1), is precluded by federal law. We disagree.

As the Court of Appeals stated in *Montgomery County v. Glenmont Hills,* 402 Md. 250, 267, 936 A.2d 325 (2007):

[federal] preemption may occur in one or more of three circumstances:

(1) Express preemption: where Congress has expressly stated its intent to preempt State law;

(2) Preemption by occupation of the field: even in the absence of such express intent, where there is evidence of Congress's intent to exclusively occupy a given field and the State law falls within that field; and

(3) Preemption by direct conflict: where there is a direct conflict between the Federal and State law, to the extent that "compliance with both federal and state law is a physical impossibility."

(Quoting *Wells v. Chevy Chase Bank,* 377 Md. 197, 209–10, 832 A.2d 812 (2003)). Absent evidence to the contrary, we presume that Congress intended not to preempt state law. *Id.*

18 U.S.C. § 922(g) (2008) states, "It shall be unlawful for any person (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition...." Under § 922(g), a crime's potential punishment for federal disqualification purposes is measured by reference to the law of the convicting jurisdiction. *Id.,* § 921(a)(20). It is Brown's contention that federal law thereby preempts Maryland from using its own criminal law to determine whether an out-of-state conviction disqualifies an individual from owning a regulated firearm.

■ But 18 U.S.C. § 927 makes it clear that the above-referenced federal firearms statutes effect neither express preemption nor field preemption:

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

Consequently, the only preemption issue is whether § 922(g) and PS § 5-133(b)(1), as interpreted by the Attorney General, are in such "direct conflict" that it is impossible to enforce both statutes. We perceive no such conflict.

■ Section 922(g) does not establish any sort of right to possess a firearm; it simply prohibits firearm possession by certain persons. That does not preclude the states from prohibiting *additional* persons from possessing firearms, for the states are free to regulate beyond what federal law requires. *Cf. Glenmont Hills, supra,* 402 Md. at 268–69, 936 A.2d 325 (upholding local law prohibiting discrimination against federal housing voucher recipients although federal law did not require landlords to accept federal housing vouchers).

Brown argues that 18 U.S.C. § 922(g) effectively conflicts with the Attorney General's interpretation by virtue of 18 U.S.C. § 926A, which states:

Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose *from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm* . . . .

(Emphasis added.) We shall assume *arguendo* that § 926A establishes a federal right of transportation in interstate travel enforceable despite state law (an issue that is not before us). *See Torraco v. Port Auth.,* 539 F.Supp.2d 632, 642–43 (E.D.N.Y.2008). Regardless of whether that is so, the portion

of the statute we have italicized clarifies that § 926A at most entitles a person who is in legal possession of a firearm in one state to transport the firearm to another state where he may also legally possess the weapon. The statute has no bearing upon whether PS § 5–101(g)(3) should be applied by reference to the criminal law of Maryland or the convicting jurisdiction, or must be interpreted to permit unrestricted possession of firearms in Maryland even when the guns are not being transported between states where their possession is legal.

We hold that federal law does not preempt Maryland from adopting and applying its own law to determine the effect of out-of-state convictions under this State's criminal disarmament laws. In doing so, we are in accord with other state courts holding that § 922(g) does not preempt their state criminal disarmament laws. *See Helmer v. Miller,* 19 Cal. App.4th 1565, 1572, 25 Cal.Rptr.2d 8 (Cal.App.1993); *State v. Haddenham,* 110 N.M. 149, 793 P.2d 279, 287 (1990) ("The fact that the state and federal firearms laws may be different is not a sufficient basis upon which to find a conflict so as to nullify state law.").

### 3. *Full Faith and Credit Clause*

■ Brown's shotgun assault upon the position adopted by the Board also includes an argument that the Attorney General's interpretation of PS § 5–133(b)(1) is prohibited by the Full Faith and Credit Clause of the U.S. Constitution because the Board's ruling imposes upon Brown a "punishment" for possession of a prohibited weapon different from the sentence he received in the District of Columbia. At the outset, we reject Brown's premise that depriving certain convicted criminals of the right to possess regulated firearms constitutes a punishment. *See State v. Jones,* 340 Md. 235, 266, 666 A.2d 128 (1995) (temporary suspension of driver's licenses for suspected drunk driving not punitive); *Long v. Am. Legion Potomac Post 202,* 117 Md.App. 18, 26, 699 A.2d 456 (1997) (denial and revocation of licenses to operate gambling "tip jars" not punitive); *see also Young v. State,* 370 Md. 686, 716, 806 A.2d 233 (2002) (requiring registration by convicted sex offenders

not punitive). Moreover, we disagree that there is any constitutional infirmity.

■ " 'The purpose of the Full Faith and Credit Clause is to require a state court to recognize judgments of courts of other states. . . .' " *Gillis v. State,* 333 Md. 69, 76, 633 A.2d 888 (1993) (quoting *Weinberg v. Johns–Manville Sales Corp.,* 299 Md. 225, 234, 473 A.2d 22 (1984)). Nevertheless, "the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment." *Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970). In fact, it is uncertain whether the clause applies at all to out-of-state criminal judgments. *Gillis, supra,* 333 Md. at 77, 633 A.2d 888.

■ In *Gillis,* the Court of Appeals held that the Full Faith and Credit Clause did not prevent Maryland from prosecuting a defendant for murder, under its own criminal law, after Delaware had acquitted the defendant of murdering the same victim, under Delaware criminal law. The Court based its decision on the "dual sovereignty" doctrine: the defendant could be not guilty of violating one state's laws, yet guilty of violating another's, based on the same conduct. *Id.* at 76, 633 A.2d 888.

The dual sovereignty doctrine also controls the outcome of this case. Just as Maryland's prosecution of the defendant in *Gillis* did not constitute a failure to recognize the Delaware acquittal, stripping Brown of his right to possess a regulated firearm in this State would not constitute a failure to recognize the D.C. judgment in Brown's case. Rather, it would merely constitute the enforcement of Maryland law.

■ We hold that, consistent with the Full Faith and Credit Clause, Maryland may deny the right to possess a regulated firearm to a criminal convicted and punished in another jurisdiction dissimilarly from the manner in which Maryland treats the offense. Other state courts share our conclusion. *State v. Langlands,* 276 Ga. 721, 583 S.E.2d 18, 20 (2003); *Menard, supra,* 888 A.2d at 62 n. 5.

## C. *Whether to Use the Past or Present Equivalent Maryland Offense*

Brown also raises an issue as to the appropriate version of the statute that should be used to determine the maximum penalty for the comparable Maryland offense; *i.e.*, in applying PS § 5–101(g)(3) to an out-of-state conviction, should we look to the equivalent Maryland offense that existed at the time of the conviction or the version in effect at the time the convicted criminal possessed (or sought to possess) a regulated firearm?

We need not answer this question in Brown's case because the penalty for the comparable Maryland offense has been the same at all times since Brown's conviction. The Maryland statute that criminalizes wearing or carrying a dangerous weapon has been recodified but not materially amended since Brown's D.C. conviction; the nature of the crime, its classification as a misdemeanor, and its penalty—up to three years' imprisonment—have not changed. *See* Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 36(a).[9]

## D. *Whether the Board Was Correct to Conclude that Brown's Conviction is Equivalent to the Maryland Offense of Wearing or Carrying a Dangerous Weapon*

The final question Brown presents is whether there was substantial evidence to support the Board's determination that

---

**9.** At the time of Brown's offense and conviction, Art. 27, § 36(a) stated, in relevant part:

Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor, and upon conviction, shall be fined not more than $1,000 or be imprisoned in jail, or sentenced to the Maryland Department of Correction for not more than three years; and in case of conviction, if it shall appear from the evidence that such weapon was carried, concealed or openly, with the deliberate purpose of injuring the person or destroying the life of another, the court shall impose the highest sentence of imprisonment prescribed.

the act that Brown was convicted of committing in D.C. would constitute the Maryland offense of wearing or carrying a dangerous weapon. Because this issue comes before us in a civil appeal from the denial of a permit, we need not decide whether the evidence before the Board would have been sufficient to support a conviction for a criminal offense that was predicated upon a prior conviction for a disqualifying crime—*cf. Bowman v. State,* 314 Md. 725, 733, 552 A.2d 1303 (1989) (to support enhanced sentence, because the predicate conviction was for an offense which could have theoretically been committed without violence, the State was obligated to introduce evidence that could establish beyond a reasonable doubt that the predicate conviction was in fact a "crime of violence" on the part of the defendant); *Brown v. State,* 311 Md. 426, 441, 535 A.2d 485 (1988) (same). We are persuaded there was substantial evidence to support the Board's determination.

Brown argues that he was convicted under D.C.Code § 22–3214(a), which proscribes the mere possession of a narrow class of dangerous weapons, regardless of intent, whereas Art. 27, § 36(a) and CR 4–101(c)(2) require intent to injure. The Board responds that the evidence in the record supports its conclusion that Brown was obviously convicted under D.C.Code § 22–3214(b), which proscribes possession of any dangerous weapon with "intent to use [the weapon] unlawfully against another." By Brown's own admission on his permit application, Brown was convicted of possessing a pipe. A pipe is not one of the proscribed weapons listed in subsection (a) of § 22–3214, but could qualify as an "other dangerous weapon" under subsection (b) if possessed with intent to use unlawfully against another. *See United States v. Brooks,* 330 A.2d 245, 247 (D.C.1974). Consequently, the evidence before the Board supported the conclusion that Brown's conviction must have been under § 22–3214(b).

We recognize that there are distinctions between a conviction under D.C.Code § 22–3214(b) and a Maryland conviction for wearing or carrying a dangerous weapon. Maryland law requires that the defendant intend to injure the victim, where-

as the D.C. statute applies where the defendant intends to use the weapon "in an assaultive or otherwise unlawful manner." *Id.* at 246–47. Therefore, Brown's conviction, which the evidence indicates was the product of a plea bargain, could theoretically have been for possessing a pipe merely with the intent to put his victim in fear of bodily harm, rather than an actual intent to injure. D.C.Code § 22–504(a) (1989 Repl. Vol.); *Mihas v. United States*, 618 A.2d 197, 200–01 (D.C. 1992). Furthermore, as Brown notes, the Maryland offense requires that the weapon be in the defendant's immediate possession or in such proximity as to be available for his immediate use, *In re Colby H.*, 362 Md. 702, 713, 766 A.2d 639 (2001), whereas, under the D.C. statute, Brown could have theoretically been convicted of mere constructive possession of the pipe. *See Moore v. United States*, 927 A.2d 1040, 1050 (D.C.2007).

 Nevertheless, because this case comes before us pursuant to judicial review of the ruling of an administrative agency, we are obligated to affirm if there was substantial evidence supporting the finding that the applicant had been convicted of a disqualifying crime. Such evidence was present in this case. Trooper Cusimano testified that FBI records reflect that Brown was originally charged with "assault with a dangerous weapon." On his firearm application, Brown admitted the fact of his D.C. conviction for "[p]ossession of a prohibited weapon (pipe)," and provided the following description of the underlying act: "Got into an altercation with another male." The Board could rationally infer from these admissions that, during the November 1983 incident, Brown was in personal possession of a pipe, which he intended to use in the "altercation" against the unidentified "male," and that he was later convicted of committing that same act. Such a D.C. conviction for possession of a dangerous weapon would be equivalent to a Maryland conviction for wearing or carrying a dangerous weapon.

Accordingly, the circuit court was correct to affirm the Board's denial of the handgun permit application.

JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.