23 A.3d 880

**Troy A. JONES, Jr.**

v.

**STATE of Maryland.**

**No. 87, Sept. Term, 2010**

Court of Appeals of Maryland.

July 6, 2011.

Reconsideration Denied Aug. 11, 2011.

438

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BATTAGLIA, J.

In the aftermath of *Evans v. State*, 420 Md. 391, 23 A.3d 223 (2011), we now address whether the statutory provision criminalizing the unlawful possession of a regulated firearm by a convicted felon has a related penalty provision.

Petitioner, Troy A. Jones, Jr., seeks to overturn his conviction on Count Five of a criminal information filed against him which charged him with the unlawful possession of a regulated firearm after having been convicted of a felony, pursuant to Section 5–133(b) of the Public Safety Article, Maryland Code (2003),[1] asserting that Section 5–133(b) does not contain a

---

1. Section 5–133(b) of the Public Safety Article, Maryland Code (2003), which generally prohibits the possession of a regulated firearm by a

penalty provision and that the penalty provisions in Sections 5–133(c) and 5–143 of the Public Safety Article do not apply.[2]

___

person who has previously been convicted of "disqualifying crime," provides in pertinent part:

(b) *Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime. . . .

All references to Section 5–133(b) of the Public Safety Article ("Section 5–133(b)") throughout are to Maryland Code (2003), unless otherwise noted.

Section 5–101(g) of the Public Safety Article, Maryland Code (2003), the definition section of the "Regulated Firearms" Subtitle, defines "disqualifying crime" as:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

All references to Section 5–101(g) of the Public Safety Article ("Section 5–101(g)") throughout are to Maryland Code (2003), unless otherwise noted.

2. Section 5–133(c) of the Public Safety Article, Maryland Code (2003), provides:

(c) *Penalty for possession by person convicted of crime of violence.*—

(1) A person may not possess a regulated firearm if the person was previously convicted of:

(i) a crime of violence; or

(ii) a violation of § 5–602, § 5–603, § 5–604, § 5–605, § 5–606, § 5–607, § 5–608, § 5–609, § 5–612, § 5–613, or § 5–614 of the Criminal Law Article.

(2) A person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment for not less than 5 years, no part of which may be suspended.

(3) A person sentenced under paragraph (1) of this subsection may not be eligible for parole.

(4) Each violation of this subsection is a separate crime.

All references to Section 5–133(c) of the Public Safety Article ("Section 5–133(c)") throughout are to Maryland Code (2003), unless otherwise noted.

Section 5–143 of the Public Safety Article, Maryland Code (2003), provides:

(a) *Prohibited.*—Except as otherwise provided in this subtitle, a dealer or other person may not knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle.

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

(c) *Separate crime.*—Each violation of this section is a separate crime.

He also asserts, alternatively, that an out-of-state conviction cannot serve as a predicate conviction for a violation of Section 5–133(b) and that the trial judge erred in imposing a mandatory minimum five-year sentence for the violation. The Court of Special Appeals affirmed Jones's conviction and sentence for Count Five,[3] and we granted certiorari, *Jones v. State,* 416 Md. 272, 6 A.3d 904 (2010), to answer the following questions:

1.   Is there a penalty provision applicable to a violation of Public Safety Article § 5–133(b), and if not, is a violation of that subsection a crime and does a court have jurisdiction over the charge?

2.   Can a prior out-of-state conviction serve as the predicate conviction where the State has charged a defendant with possessing a regulated firearm after having been convicted of "a violation classified as a felony in the State" in violation of Public Safety Article § 5–133(b)?

3.   Having found that the trial court erred in imposing the mandatory-minimum, five-year, no-parole penalty applicable to violations of § 5–133(c) for a violation of § 5–133(b), did the Court of Special Appeals err by only striking the no-parole condition and failing to vacate the sentence and remand the case for a new sentencing so that the judge could consider imposing a sentence of less than five years?

We shall hold that Section 5–143 of the Public Safety Article serves as the penalty provision for a violation of Section 5–

---

All references to Section 5–143 of the Public Safety Article ("Section 5–143") throughout are to Maryland Code (2003), unless otherwise noted.

**3.**   Jones raised five questions before the Court of Special Appeals, all of which related to Jones's conviction on Count Five:

1.   Did the Circuit Court err by convicting Mr. Jones of an uncharged crime?

2.   Was the evidence insufficient to convict Mr. Jones of violating Public Safety Article § 5–133(b)?

3.   Even if the evidence was sufficient to convict Mr. Jones of violating § 5–133(b), was a violation of this subsection a crime?

4.   Was a term of imprisonment for five years without parole an illegal sentence for a violation of § 5–133(b)?

5.   Was the evidence insufficient to convict Mr. Jones of violating Public Safety Article § 5–133(c)?

133(b) of that Article. We shall further hold that an out-of-state conviction can serve as a predicate conviction for the purposes of Section 5–133(b). Finally, although we affirm the conviction, we shall hold that the trial judge erred in imposing a *mandatory* five-year sentence for a violation of Section 5–133(b) and shall remand for a new sentencing.

Jones was charged in a criminal information in Case # 207270027 with two drug crimes.[4] He also was accused in another criminal information in Case # 207270028 with five firearm-related crimes, one of which was Count Five, involving his possession, as a felon, of a handgun.[5] Jones and the State agreed to proceed on an Agreed Statement of Facts as to

---

4. Case number 207270027 contained two charges. Count 1: "Possess[ion] [of] a controlled dangerous substance of schedule # 1 to wit: marijuana which is a Narcotic Drug in sufficient quantity reasonably to indicate under all circumstances an intent to distribute the same, in violation of the Criminal Law Article, Section 5–602 of the Annotated Code of Maryland"; Count 2: "Possess[ion] [of] a certain controlled dangerous substance of schedule # 1 to wit: marijuana in violation of Criminal Law Article, Section 5–601 of the Annotated Code of Maryland."

5. Case number 207270028 contained five charges. Count 1: "[D]uring and in relation to a drug trafficking crime unlawfully did possess under sufficient circumstances to constitute an nexus to the drug trafficking crime and use, wear, carry and transport a firearm to wit: A .25 caliber Lorcin handgun-serial # LT043232 in violation of Criminal Law Article, Sec. 5–621 of the Annotated Code of Maryland"; Count 2: "Possess, own, carry, and transport a firearm to wit: A .25 caliber Lorcin handgun-serial # LT043232 after having been convicted of a felony under the Controlled Dangerous Substances Laws of Maryland to wit: 2003–Fairfax County, VA-case # 102485 in violation of Criminal Law Article, Section 5–622 of the Annotated Code of Maryland"; Count 3: "Wear, carry and transport a handgun, upon and about his person, in violation of Criminal Law Article, Section 4–203 of the Annotated Code of Maryland"; Count 4: "[H]aving been previously convicted of a disqualifying crime, to wit: 2003–Fairfax County, VA-case # 102485 a crime of violence, did possess a regulated firearm, to wit: A .25 caliber Lorcin handgun-serial # LT043232 in violation of Public Safety Article, Section 5–133(b)(1) of the Annotated Code of Maryland"; Count 5: "[P]ossess a regulated firearm, to wit: A .25 caliber Lorcin handgun-serial # LT043232 after having been convicted of a disqualifying crime, to wit: 2003–Fairfax County, VA-case # 102485 a violation classified as a felony in this State, in violation of Public Safety Article, Section 5–133(b) of the Annotated Code of Maryland."

Count Two, in which he was charged with illegal possession of marijuana in Case # 207270027; Count Four, in which he was charged with illegal possession of a regulated firearm having been convicted of a crime of violence in Case # 207270028; and Count Five, the charge with which we are concerned, from Case # 207270028, in which the information alleged that: "[Troy A. Jones, Jr.] unlawfully did possess a regulated firearm, to wit: A .25 caliber Lorcin handgun-serial # LT043232 after having been convicted of a disqualifying crime, to wit: 2003–Fairfax County, VA-case # 102485 a violation classified as a felony in this State, in violation of Public Safety Article, Section 5–133(b) of the Annotated Code of Maryland."

The Agreed Statement of Facts reflected that Jones admitted he had purchased a handgun after having been convicted of manufacturing cocaine in the Commonwealth of Virginia:

[ASSISTANT STATE'S ATTORNEY]: Your Honor, on July 30, 2007, at approximately 0630 hours in the morning, the Warrant Apprehension Task Force responded to 4200 Eldone Road in Baltimore City, State of Maryland, looking for a wanted person. On arrival, Detective D. Koenigberg, from the Baltimore County Police Department, and other members of the Warrant Apprehension Task—Task Force, knocked on the door and was met by a black female. Detective Koenigberg said that the police were looking for a wanted person and was invited in by the female.

In the back bedroom of the residence, Detective Koenigberg made contact with a black male, later identified as Defendant, Troy A. Smith, Jr. [Troy A. Jones, Jr.] [6] Detective Koenigberg looked under the bed (indiscernible) a wanted subject and there was a magazine for a firearm. Mr. Smith [Jones] was in the bed—was in the bed—Mr. Smith [Jones] was in the bed of the room with no clothes. Mr. Smith [Jones] attempted to put his shorts on when Detective

6. The Agreed Statement of Facts refers to Petitioner as "Troy A. Smith, Jr.," but Petitioner subsequently identified himself at trial and on appeal as "Troy A. Jones." Moreover, the State identified Petitioner in the two bills of criminal information as "Troy A. Jones, Jr.," listing "Troy A. Smith, Jr." as a known alias.

Koenigberg observed a bulge in the right front pocket of his shorts.

Detective Koenigberg grabbed the bulge with his hand and immediately knew it was a gun. Mr. Smith [Jones] stated to Detective Koenigberg that, somebody must have put the gun in my shorts while I slept. Also in the right front pocket of his shorts was a Maryland identification card with a picture of the Defendant and the information of Troy A. Smith [Jones], with a date of birth of 9–13–1982. In the left front pocket of those same shorts, was a plastic sandwich baggie, with 10 smaller zip-loc—zip-loc (indiscernible) red devil baggies, containing a greenish, brown vegetable matter, suspect marijuana.

Mr. Smith [Jones] was placed under arrest and transported to the Warrant Apprehension Task Force Office. The gun was described as a .25 caliber, Lucerne handgun, with a serial number of LT043202. The handgun is considered a regulated firearm in the State of Maryland.

Also, on July 30th, 2007, Sergeant Steve Gabis of the Baltimore County Police Department assigned Sergeant John Carhart of the Maryland State Police, who are assigned to the joint Baltimore City, Baltimore County, Maryland State Police Gun Tracing Unit, responded to the—to interview Mr. Smith [Jones]. At approximately 0820 hours, Mr. Smith [Jones] was read his Miranda warnings by Sergeant Gabis. Mr. Smith [Jones] stated that he understood his rights and agreed to be interviewed by the sergeants. Mr. Smith [Jones] stated that he was arrested and convicted for manufacturing cocaine in the State of Virginia in the year 2002 and 2000. Sergeant Gabis reviewed Mr. Smith's [Jones's] criminal record and found he was convicted of manufacturing, sale and possession of a cultivated substance in Fairfax County, Virginia on 3–24–2003. Mr. Smith [Jones] continued by stating that the handgun that was found, was his and he purchased the handgun from a person—a person in—driving a black Navigator in a bar called, Sedonia Inn. Mr. Smith [Jones] further stated he paid $70 for the firearm. Mr. Smith [Jones] admitted that

the marijuana in his shorts was also his, that he bought wholesale from another person. He said the marijuana was for personal use.

The Statement of Facts also reflected that the handgun Jones possessed was inoperable and that conviction records from Virginia from 2003 showed that Jones had been convicted of possession of a controlled substance with intent to distribute in Virginia.

[ASSISTANT STATE'S ATTORNEY]: The State's Exhibit No. 2, the State will introduce into evidence [an] Operability Report for the firearm. It is a pistol, semi-automatic, LT25, gray in color, with a barrel length of 2.38 inches and that the firearm was inoperable.

[COUNSEL FOR JONES]: No objection [ ] as to the report itself, as whether it qualifies as a firearm (indiscernible).

[ASSISTANT STATE'S ATTORNEY]: State's Exhibit No. 3, the State will also enter into evidence, a Sentencing Order from the Commonwealth of Virginia, Criminal Case Number 102485, that on March 21st, 2003, Mr. Jones was convicted of possession of a controlled substance—a controlled drug, with intent to distribute and it is certified, two test copies by the Clerk of Virginia—the Clerk of the Court of Virginia, excuse me. The State will admit that as State's Exhibit No. 3.

If called to testify, the Officers would identify Mr. Smith [Jones] as the person in possession of the gun and the drugs on that date (indiscernible) in Baltimore City, State of Maryland.

Jones's counsel moved for a judgment of acquittal on Count Five arguing that Jones's out-of-state conviction could not serve as a predicate felony in Maryland, among other issues not relevant here. The judge denied the motion, explaining that the predicate conviction in Virginia met the statute's requirement:

[COURT]: [T]he conviction in Virginia is for that which would have been a felony here in Maryland, had the Defen-

dant been tried here in Maryland. And it would have been the companion or equal charge in Virginia as to the specific possession with intent to distribute charge listed in the statute in Maryland.

For those reasons, the Court is going to deny your Motion for Judgment of Acquittal as to the—the charge of possession of a regulated firearm, having been convicted of a disqualifying crime under Public Safety Act 5–133(c)(i).

As to Count Five, the court sentenced Jones to five years' imprisonment without parole, explaining "[t]his is a mandatory sentence." [7]

Jones noted an appeal to the Court of Special Appeals and argued that the Circuit Court erred by convicting him of a crime with which he was not charged, convicting him on insufficient evidence, convicting him of a violation which was not a crime, and by giving him an illegal sentence. The Court of Special Appeals affirmed Jones's conviction and sentence in an unreported opinion, reasoning that Jones's Virginia conviction, coupled with his admission regarding that conviction in the Agreed Statement of Facts, provided sufficient evidence to "support a finding that he was convicted of manufacturing cocaine in Virginia," a violation which would constitute a felony in Maryland under Section 5–133(b). The Court of Special Appeals vacated the no-parole condition of Jones's five-year sentence on Count Five, however, reasoning that "a no-parole penalty is mandated only for a violation of PS § 5–133(c), not for a violation of PS § 5–133(b)." Jones, thereafter, filed a Motion for Reconsideration, arguing that vacatur of the no-parole condition was insufficient to remedy the misapplication of a mandatory sentencing provision, which the intermediate appellate court denied.

■ We very recently in *Evans v. State*, 420 Md. 391, 23 A.3d 223 (2011), acknowledged the mandatory relationship

---

7. Apparently, the sentencing judge was under the impression that the five-year mandatory minimum sentence with no parole from Section 5–133(c) applied to Jones's conviction under Section 5–133(b).

between language in a statute criminalizing behavior and a related penalty provision:

> [G]enerally, criminal statutes must contain language that criminalizes the forbidden act, as well as a provision that penalizes the behavior.[7]  This proposition, as hornbook law, is succinctly stated by Wayne R. LaFave in the 2010 edition of one of our oft-quoted tomes:  "[A] crime is made up of two parts, forbidden conduct and a prescribed penalty.  The former without the latter is no crime.  The modern criminal penalties are:  the death penalty, imprisonment with or without hard labor, and the fine.  In many cases the section of the statute that describes the forbidden conduct concludes with a statement of the punishment;  or perhaps one section sets forth the forbidden conduct and the next section the punishment."  See *Gargliano v. State*, 334 Md. 428, 438, 450, 639 A.2d 675, 680, 685 (1994), in which we reversed a trial court's application of a mandatory ten-year penalty for drug offenders that "previously [have] been convicted" of similar offenses to an offender who had been convicted of a drug offense after the conviction of the principal offense. In so doing, we relied on the fundamental principle that "criminal statutes [must] be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable and what the penalty for such conduct might be *before* the criminal conduct is committed."

[7] An exception to this general rule arises where the Legislature fails to provide a penalty for a common law offense.  In such cases, the sentence is left to the "sound discretion of the trial court, subject only to the constitutional prohibition against cruel and unusual punishment."  *Street v. State*, 307 Md. 262, 267, 513 A.2d 870, 872–873 (1986).

When a statute, as the instant one, fails to internally contain a penalty provision, its ability to criminalize conduct becomes more complicated.  LaFave is of assistance in identifying the spectrum of issues in this regard, including in the first instance, those about which there is "little difficulty" for a court to determine criminality:  "Sometimes, however, the statute forbidding the conduct may refer to another statute for the punishment, such as the rather common

statute providing that whoever commits embezzlement (defining it) shall be punishable as if he committed larceny, with the larceny statute providing for a certain penalty of fine or imprisonment. Another method sometimes encountered is for the statute, after forbidding certain conduct, to conclude "shall be guilty of a felony" (or "misdemeanor"), without setting forth the penalty; but another catch-all statute provides that one who commits a felony (or a misdemeanor) not otherwise punishable shall be punished in a prescribed way. Similarly, the statute defining certain conduct as criminal may say that this crime is a felony or misdemeanor of a certain classification; another statute then indicates the permissible punishment for each classification. In all of these cases there is little difficulty in concluding that, since the statutes set forth both forbidden conduct and criminal penalty, the legislature has created a crime."

For example, in *Chen v. State*, 370 Md. 99, 803 A.2d 518 (2002), we were faced with a penalty provision that, due to a recodification, appeared in a different title of the Tax–General Article than the forbidden conduct it punished, namely the possession of unstamped cigarettes.[8] We determined that the two sections in issue could be read *in para materia* in a plain meaning analysis to warrant application of the penalty provision in what was a separate statutory provision.

[8] Section 12–305(a) of the Tax–General Article, Maryland Code (1988, 1997 Repl.Vol.), provided:

(a) *Possession or sale of unstamped cigarettes.*—Unless otherwise authorized under this title, a person may not possess, sell, or attempt to sell unstamped cigarettes in the State.

Section 13–1014(a) of the Tax–General Article, Maryland Code (1988, 1997 Repl.Vol.), provided:

(a) *In general.*—A person who willfully possesses, sells, or attempts to sell unstamped or improperly stamped cigarettes in the State in violation of Title 12 of this article is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.

*Evans v. State*, 420 Md. 391, 23 A.3d 223 (2011) (citations omitted).

Faced with a question similar to that before us in the instant case, regarding whether a statute, without a penalty provision, was criminalized by the association with a separate penalty provision, we again turned to LaFave:

In the more difficult situation, however, the omission of a penalty provision in or related to a statute cannot support a criminal conviction for its violation: "But sometimes the legislature forbids conduct and then omits (in most cases unintentionally) to provide for a penalty; and there is no catchall statute of the type mentioned above. In such a situation one who engages in the forbidden conduct is not guilty of a crime."

*Id.* (citations omitted), quoting Wayne R. LaFave, Criminal Law § 1.2(d), at 12–13 (5th ed.2010). In *Evans,* we determined that the penalty provision of Section 5–143(b) of the Public Safety Article, which also is in issue in the present case, did not relate to Section 5–142 of the same Article, which criminalized the obliteration of a manufacturer's identification mark or number on a firearm, thereby reversing Evans's conviction for that offense.

Section 5–133(b) of the Public Safety Article, under which Jones was convicted, provides in pertinent part:

(b) *Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime . . . .

"Disqualifying crime" has been defined as:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

Section 5–101(g) of the Public Safety Article. Section 5–143 of the Public Safety Article, according to the State, supplies the penalty for Jones's conviction:

(a) *Prohibited.*—Except as otherwise provided in this subtitle, a dealer or other person may not knowingly participate

in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle.

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

(c) *Separate crime.*—Each violation of this section is a separate crime.

There is no internal penalty provision in Section 5–133(b). Section 5–143(b), which the State asserts applies, does not explicitly refer to Section 5–133(b). Section 5–143(a) explicitly refers, however, to "violation[s] of this subtitle," and generally criminalizes the "illegal ... possession ... of a regulated firearm," "[e]xcept as otherwise provided in this subtitle." Section 5–133(b), from the same Subtitle as Section 5–143(a), prohibits the act of "possess[ing] a regulated firearm," and does not "otherwise provide[ ]" a penalty. The term "possession" appears in both provisions, as well as does the phrase "regulated firearm" which, facially, distinguishes the plain meaning analysis in this case from that of *Evans* in which reconciliation of the terms was impossible between the two statutes.

Although the language appears facially reconcilable, Section 5–133(b) prohibits possession by a convicted felon of a regulated firearm, a status crime, while Section 5–143(a) embraces the illegal possession of a regulated firearm for any reason, not just for being a convicted felon. It is this distinction upon which Jones rests his assertion that the two provisions are irreconcilable, relying on the cases of *United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948), and *Keller v. State,* 11 Md. 525 (1857). In *Evans,* the Supreme Court of the United States determined that the acts of "concealing or harboring" an alien could not be reconciled with the acts of "land[ing] or br[inging] in" an alien, *id.* at 493–94, 68 S.Ct. at 640, 92 L.Ed. at 830, while in *Keller,* we determined, in a plain meaning analysis, that the Legislature had placed the act of

selling lager beer without a license "on the same footing" as selling liquor without a license.[8]  11 Md. at 536.

We explained the legislative history of Section 5–143 in *Evans*, and opined that it had evolved over time as a catch-all penalty provision, but not one encompassing the conduct of obliteration, removal, change or alteration of the manufacturer's identification mark or number on a firearm with which Evans was charged. *Evans*, 420 Md. at 449–50, 23 A.3d at 887, 2011 WL 2572749. Whether Section 5–133(b) is "saved" by its historical relationship to Section 5–143, or whether it, too, is an "orphan" provision, is the issue.

In *Evans*, we acknowledged that each of Section 5–143's predecessor provisions from 1941 until 1996 acted as a catch-all provision "at the end of a series of" prohibited acts, to punish violations of "any of the provisions" of the Subtitle:

[The] penalty provision was also enacted in 1941 at the end of a series of four prohibited acts, which included the obliteration, removal, change or alteration of a manufactur-

---

8.  Jones asserts, moreover, that Section 5–143(b) cannot be the penalty provision related to Section 5–133(b), but rather, is a part of its own crime that must be separately charged, thereby interpreting "knowing[ ] participat[ion]" in Section 5–143(a) as adding an additional element to that which is contained in Section 5–133(b). In so doing, Jones relies on *Chow v. State*, 393 Md. 431, 903 A.2d 388 (2006), in which we discussed former Section 449(f) of Article 27, the predecessor to Section 5–143, which provided:

(f) *Knowing participants in sale, rental, etc.*—Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense.

Md.Code (1957, 1996 Repl.Vol., 2002 Supp.), Art. 27, Section 449(f). In *Chow*, in dicta, we discussed the "knowingly" language in our analysis of whether a gratuitous transfer of a weapon was penalized. We recognized in *Chow*, however, that "knowingly" was not an additional element, because just "*as in any other criminal prosecution*," the State must "prove by reference to facts and circumstances surrounding the case that [the defendant] knew that his conduct was unauthorized or illegal." *Chow*, 393 Md. at 473, 903 A.2d at 413 (emphasis added), quoting *Liparota v. United States*, 471 U.S. 419, 434, 105 S.Ct. 2084, 2092–2093, 85 L.Ed.2d 434, 445 (1985).

er's identification mark or number on a firearm and read: "Any person violating any of the provisions of this sub-title shall upon conviction thereof be fined not more than Three Hundred Dollars ($300) or imprisonment for not more than one (1) year, or both." The other prohibited acts in the list included proscriptions on selling or transferring a pistol or revolver to persons convicted of a crime of violence or who were fugitives from justice, possessing a pistol or revolver if a person had been convicted of a crime of violence or who were fugitives from justice, and possessing, selling, transferring, or disposing of a stolen pistol or revolver. The latter two sections explicitly dealt with a "pistol or revolver," a term which was defined as "any firearm with barrel less than twelve inches in length."

*Evans*, 420 Md. at 453–54, 23 A.3d at 889, 2011 WL 2572749 (citations omitted). The original catch-all penalty of one year and $300 in Section 531E of Article 27 applied to a limited number of possessory offenses, those being of a pistol or revolver by a person previously convicted of a "crime of violence" or a "fugitive from justice":

It shall be unlawful for any person who has been convicted of a "crime of violence" or who is a "fugitive from justice" to possess a pistol or revolver.

Maryland Code (1939, 1943 Supp.), Article 27, Section 531E.

By 1996, the possessory offenses had multiplied and they, among other offenses, also were followed by a successor to the original catch-all penalty provision:

§ 444. Obliterating, etc., identification mark or number.

It shall be unlawful for anyone to obliterate, remove, change or alter the manufacturer's identification mark or number on any firearms. Whenever on trial for a violation of this section the defendant is shown to have or have had possession of any such firearms, such fact shall be presumptive evidence that the defendant obliterated, removed, changed or altered the manufacturer's identification mark or number.

## § 444. Restrictions on sale, transfer and possession of pistols and revolvers.

\*     \*     \*

(b) *Sale or transfer to criminal, fugitive, etc.*—A dealer or person may not sell or transfer a pistol or revolver to a person whom he knows or has reasonable cause to believe has been convicted of a crime of violence, or of a violation of any of the provisions of § 286, § 286A, or § 286C of this article, or any conspiracy to commit any crimes established by those sections or of any of the provisions of this subtitle, or is a fugitive from justice, or is a habitual drunkard, or is addicted to or a habitual user of narcotics, barbiturates or amphetamines, or is of unsound mind, or to any person visibly under the influence of alcohol or drugs, or to any person under 21 years of age as required by federal law.

(c) *Possession by criminal, fugitive, etc.*—A Person may not possess a pistol or revolver if the person:

(1)  Has been convicted of:

(i)  A crime of violence;  or

(ii)  Any provisions of this subtitle;  or

(2)  Is:

(i)  A fugitive from justice;

(ii)  A habitual drunkard;

(iii)  A habitual abuser of narcotics, barbiturates, or amphetamines;  or

(iv)  Suffering from a mental disorder. . . .

## § 446.   Sale, transfer, etc., of stolen pistol.

It shall be unlawful for any person to possess, sell, transfer or otherwise dispose of any stolen pistol or revolver, knowing or having reasonable cause to believe same to have been stolen.

## § 448.   Penalties.

Any person violating any of the provisions of this subtitle unless otherwise stated herein is guilty of a misdemeanor and shall upon conviction be fined not more than $5,000 or imprisoned for not more than three years, or both.

Maryland Code (1957, 1992 Repl.Vol.), Article 27, Sections 444, 445, 446, and 448.

In 1996, Governor Parris N. Glendening proposed the adoption of Senate Bill 215 and House Bill 297, known as the "Maryland Gun Violence Act of 1996," as a part of a "comprehensive proposal aimed at reducing the epidemic of gun violence" in Maryland by generally "reducing the availability of handguns and assault weapons" and "get[ting] guns out of the hands of . . . criminals." Briefing Statement Before the Senate Judicial Proceeding Committee and the House Judiciary Committee (1996) (joint statement of Bonnie A. Kirkland, Chief Legislative Officer, Governor's Legislative Office and Colonel David B. Mitchell, Superintendent, Department of State Police), at 2.

In the 1996 legislation a new prohibition against illegal possession was included and subsequently enacted, that being the precursor to section 5–133(b):

(d) A person may not possess a regulated firearm if the person:

(1) Has been convicted of:

(i) a crime of violence;

(ii) any violation classified as a felony in this State;

(iii) any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or

(iv) any violation classified as a common law offense where the person received a term of imprisonment of more that [sic] 2 years.

(2) Is:

(i) A fugitive from justice;

(ii) A habitual drunkard;

(iii) Addicted to or a habitual user of any controlled dangerous substances;

(iv) Suffering from a mental disorder . . . .

1996 Maryland Laws, Chapter 561 and 562, Section 445(d). The "Summary of Bill" Section of the Senate Judicial Proceedings Committee Floor Report for Senate Bill 215 character-

ized the new possession law as "creat[ing] several new crimes involving the use or possession of firearms." The Revised Fiscal Note of the Department of Fiscal Services for House Bill 297, the companion bill, provided that the new law "expand[ed] the criteria under which it [was] illegal to possess a regulated firearm," so that felons convicted of possession were now subject to punishment under the statute.

During the 1996 session, the Legislature also liberated all of the other existing possessory offenses from the penalty provision, which was repealed. A new, more specific catch-all penalty provision was enacted, which read:

> (e) Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense.

1996 Maryland Laws, Chapter 561 and 562, Section 449(e). This catch-all penalty provision specifically included reference to possessory offenses, among others, which did not have their own internal penalty provision. The explanation for the addition of this language is found in the Senate Bill Floor Report and the Fiscal Note for the House Bill, which recognized that increased penalties for illegal possession of a regulated firearm was the basis for the Bill's development: The "Summary of Bill" Section of the Senate Judicial Proceedings Committee Floor Report for Senate Bill 215 characterized the new law as "increas[ing] the penalties for several current crimes relating to the use or possession of firearms." Senate Judicial Proceedings Committee Floor Report for SB 215, at 1 (1996). Likewise, the Revised Fiscal Note for House Bill 297 characterized the new penalty section as "expand[ing] the penalties for use and possession of regulated firearms." Department of Fiscal Services Revised Fiscal Note for HB 297, at 1 (1996).

The Legislature, thus, clearly intended to more strenuously penalize the possessory offenses enacted during that session, and did so, through the enactment of Section 449(e),[9] the precursor to Section 5–143.[10] Section 449(e) was the only penalty provision enacted in 1996 which incorporated possessory language and increased the penalty provision for illegal possession. To determine that 449(e) was not a related penalty provision to the possessory crimes enacted in 1996, to include the precursor to Section 5–133, would be to nullify the intent of the Legislature. *See Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005) (reasoning that the court may not "construe the statute with forced or subtle interpretations that limit or extend its application"). The plain meaning analysis of Sections 5–133(b) and 5–143 is, thus, corroborated, so that the latter Section penalizes possession by a convicted felon.

■ Jones also urges that his out-of-state conviction could not serve as a "disqualifying crime" under Section 5–133(b)(1),

---

9. In 2000, the Senate enacted a sixth penalty provision to Section 449, displacing the catch-all provision to Section 449(f). 2000 Md. Laws, Chap. 2. The Legislature explained that it wished to single out those individuals convicted of crimes of violence or certain serious controlled dangerous substances violations for a "5 year minimum mandatory term of imprisonment" if they "illegally possess[ ]" a regulated firearm. Senate Judicial Proceedings Committee Bill Analysis for SB 211 (2000).

  During the 2011 session, the Legislature increased the statutory maximum penalty for possession of a regulated firearm by a person convicted of certain crimes of violence or drug-related crimes. *See* 2011 Md. Laws, Chap. 164 and 165, Section 5–133(c).

10. The Legislature recodified and renumbered Section 445(d) in 2003 to Section 5–133(b) to read as it does today:

  (b) Possession of regulated firearm prohibited.
  A person may not possess a regulated firearm if the person:
  (1) Has been convicted of a disqualifying crime;
  (2) Has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years;
  (3) Is a fugitive from justice;
  (4) Is a habitual drunkard;
  (5) Is addicted to a controlled dangerous substance or is a habitual user;
  (6) Suffers from a mental disorder....
  2003 Md. Laws, Chap. 5, Section 5–133(b).

because the language of "disqualifying crime," regarding a "violation classified as a felony in the State" pursuant to Section 5–101(g)(2) of the Public Safety Article, does not explicitly encompass felony convictions in other states. The State, on the other hand, argues that because Jones's Virginia conviction, that of possession with the intent to distribute cocaine, is a "violation classified as a felony in the State," Jones's conviction meets the definition of "disqualifying crime" in a plain meaning analysis. The trial judge made the requisite finding that Jones's "conviction in Virginia" would have "been a felony here in Maryland," and thus, the only question is whether Section 5–133(b)(1) applies to out-of-state convictions.

At this juncture it is vital to our analysis to recognize that not all of our sister states utilize the same type of felony-misdemeanor classification system embraced in Maryland. Rather, as the Supreme Court of New Mexico noted, in *State v. Moya,* 141 N.M. 817, 161 P.3d 862, 865–866 (2007), while grappling with language that defined a prior felony conviction to include those from other jurisdictions "if the offense would have been classified as a felony in New Mexico at the time of conviction," there is a singular lack of uniformity among the fifty states regarding the classification of criminal offenses. *Id.* at 863. In that case, Moya had been given an enhanced sentence under New Mexico's Habitual Offender Act, but he urged that his Utah forgery conviction, which was classified as a misdemeanor in Utah, was erroneously considered as a "prior felony" in New Mexico. In rejecting Moya's argument, the Supreme Court of New Mexico reasoned that it would be illogical to interpret "prior felony" to apply only to offenses classified as felonies in other jurisdictions using the same classification system as New Mexico, because it would effectively "preclude the use of convictions from states that do not classify crimes as felonies." *Id.* at 866.

It is the same reasoning that precluded our Legislature from adding the language Jones proffers to be a necessity, that being that a prior out-of-state conviction be classified as a felony in the other state. Although Maryland uses a felony-

misdemeanor classification system, as well as does the majority of our sister states, many of the other states are not consistent in their felony-misdemeanor classifications with that of Maryland.[11] Even more importantly, some states do not

---

11. Arkansas, Delaware, Iowa, Ohio, and Pennsylvania utilize the felony-misdemeanor classification system. *See* Ark.Code Ann. § 5–1–106(a) (2006) ("An offense is a felony if the offense is designated a felony by ... The Arkansas Criminal Code"); Del.Code Ann. tit. 11, § 233(c) (2007) ("an offense is either a felony, a misdemeanor or a violation. Any offense not specifically designated by law to be a felony or a violation is a misdemeanor."); *see also* Iowa Code Ann. § 701.7 (West 2003, 2011 Supp.) ("A public offense is a felony of a particular class when the statute defining the crime declares it to be a felony."); *see also* Ohio Rev.Code Ann. § 2901.02(D), (F) (LexisNexis 2010) ("[r]egardless of the penalty that may be imposed, any offense specifically classified as a felony is a felony, and any offense specifically classified as a misdemeanor is a misdemeanor ... [a]ny offense not specifically classified is a misdemeanor if imprisonment for not more than one year may be imposed as a penalty"); *see also* 18 Pa. Cons.Stat. Ann. § 106 (West 1998) (designating crimes as felonies or misdemeanors, each in three respective degrees, based upon classifications enacted by the Legislature).

Some twenty-three of our sister states classify all crimes bearing a maximum sentence of over one year a "felony." *See* Code of Ala.Code § 13A–1–2(8) (LexisNexis 2005); Alaska Stat. § 11.81.900(b)(24) (2010); Cal. Pen.Code § 17(a) (West 1999); Conn. Gen.Stat. § 53a–25 (2009); Fla. Stat. § 775.08 (West 2010); Ga.Code Ann. § 16–1–3(5) (2007); Haw.Rev.Stat. § 701–107(2) (1993); 720 Ill. Comp. Stat. Ann. 5/2–7 (LexisNexis 2002); Ind.Code Ann. § 35–50–2–1 (LexisNexis 2009); Kan. Stat. Ann. § 21–4501 (2007); Ky.Rev.Stat. Ann. § 500.080(5) (LexisNexis 2008); Minn.Stat. Ann. § 609.02 (West 2009); Mo. Ann. Stat. § 556.016 (West 1999); Mont.Code Ann. § 45–2–101(23) (2009); N.H.Rev.Stat. Ann. § 625.9 (LexisNexis 2007); N.M. Stat. Ann. § 30–1–6 (1978, 2010 Cum.Supp.); N.Y. Penal Law § 10.00(5) (Consol.1998); Ohio Rev.Code Ann. § 2901.02(E) (LexisNexis 2010); Or. Rev.Stat. § 161.525 (2009); R.I. Gen. Laws § 11–1–2 (2002); Tenn. Code Ann. § 39–11–110 (2010); Wash. Rev.Code § 9A.04.040 (2010); Wyo. Stat. Ann. § 6–10–101 (2011).

Regardless of the actual maximum sentence, many states attach the classification "felony" to any criminal offense that would subject an individual to incarceration in the state correctional system. *See* Ariz. Rev.Stat. Ann. § 13–105(18) (2010); Idaho Code Ann. § 18–111 (2004); La.Rev.Stat. Ann. § 14:2(4) (2007); Mass. Ann. Laws ch. 274, § 1 (LexisNexis 2010); Mich. Comp. Laws Ann. § 750.7 (West 2004); Miss. Code Ann. § 1–3–11 (2005); Nev.Rev.Stat. Ann. §§ 193.120(2) (Lexis–Nexis 2006); N.C. Gen.Stat. § 14–1 (2009); Okla. Stat. tit. 21, § 5 (West 2002); S.D. Codified Laws § 22–1–4 (2006); Tex. Penal Code Ann. § 1.07(a)(23) (West 2011); Va.Code Ann. § 18.2–8 (2009); W.

employ the "felony-misdemeanor" dichotomy at all. Maine, for instance, classifies crimes in a "class" system, ranking each individual offense as class A, B, C, D, or E. *See* Me.Rev.Stat. Ann. tit. 17–A, § 4(1) (2006). New Jersey, on the other hand, classifies crimes in order of "degrees," first, second, third, or fourth. *See* N.J. Stat. Ann. § 2C:43–1 (West 2005). If we were to embrace Jones's argument, convictions from Maine and New Jersey could never be considered as disqualifying crimes for the purposes of illegal possession by a felon.

The diversity of classification systems necessitates the reference to Maryland's own felony classification to ensure uniformity of application of the law. The rule of lenity does not apply to Jones's conviction for being a felon in possession, because the basis for legislative draftsmanship is clear, and we do not have to guess as to intent. *See Monoker v. State,* 321 Md. 214, 222, 582 A.2d 525, 529 (1990).

■ Jones, finally, takes issue with the Court of Special Appeals' vacatur of the no-parole condition placed on his five-year sentence that the trial court imposed; he argues that a remand for a new sentencing is in order. The State concedes that the trial court used the wrong statutory section, that being Section 5–133(c) of the Public Safety Article, which mandates a term of five years' imprisonment without parole, but argues that the Court of Special Appeals was correct in just vacating the no-parole condition and leaving the rest of Jones's sentence intact.

Section 5–133(c), the section under which Jones was sentenced, provides:

(c) *Penalty for possession by person convicted of crime of violence.*—(1) A person may not possess a regulated firearm if the person was previously convicted of:

(i) a crime of violence; or

---

Va.Code Ann. § 61–11–1 (LexisNexis 2010); Wis. Stat. Ann. § 939.60 (West 2005).

(ii) a violation of § 5–602, § 5–603, § 5–604, § 5–605, § 5–606, § 5–607, § 5–608, § 5–609, § 5–612, § 5–613, or § 5–614 of the Criminal Law Article.

(2) A person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment for not less than 5 years, no part of which may be suspended.

(3) A person sentenced under paragraph (1) of this subsection may not be eligible for parole.

(4) Each violation of this subsection is a separate crime.

Section 5–133(c) clearly does not apply to Jones's conviction, because he was not charged and convicted for illegal possession of a regulated firearm after having been convicted of a crime of violence. Rather, he was convicted of illegal possession after having been convicted of a felony, for which he should have been sentenced under Section 5–143. Thus, Jones received an illegal sentence, which requires a new sentencing proceeding rather than mere vacatur of the no-parole portion under our longstanding jurisprudence. *See Medley v. State,* 386 Md. 3, 870 A.2d 1218 (2005) (remanding for new sentencing where sentencing judge incorrectly stated that the criminal fine imposed on the defendant would be used to compensate the jury); *White v. State,* 322 Md. 738, 589 A.2d 969 (1991) (remanding for new sentencing where sentencing judge three times misstated that mitigating factors had to outweigh aggravating factors for the defendant to escape the death penalty).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE SENTENCE IMPOSED BY THE CIRCUIT COURT FOR BALTIMORE CITY ON COUNT FIVE AND TO REMAND THE CASE TO THAT COURT FOR A NEW SENTENCING PROCEEDING CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE CITY.**