44 A.3d 993

**Michael T. McCLOUD**

v.

**DEPARTMENT OF STATE POLICE, HANDGUN PERMIT REVIEW BOARD.**

**No. 101, Sept. Term, 2011.**

Court of Appeals of Maryland.

May 21, 2012.

474

Keith A. Parris (Law Offices Keith A. Parris, Lanham, MD), on brief, for Petitioner.

Mark H. Bowen, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD) on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and ALAN M. WILNER (Retired, Specially Assigned), JJ.

ADKINS, J.

In this case, we consider how a conviction in another jurisdiction affects an applicant's ability to obtain a handgun permit under Maryland law. Petitioner Michael T. McCloud applied for a handgun permit but was denied because in 2006 he had been convicted in the District of Columbia of attempting to carry a pistol without a license.

In denying Petitioner's application, the Maryland State Police relied on the Maryland Attorney General's Opinion in 91 Op. Att'y Gen. 68 (2006) ("Attorney General's Opinion" or "Opinion"). The Opinion advises that an out-of-state conviction can disqualify an applicant from obtaining a handgun permit. It adds that, when determining if such a conviction

disqualifies an applicant, an agency should look to whether the penalty for the equivalent crime in Maryland meets the statutory threshold for barring possession of a handgun under Sections 5–101(g)(3) and 5–133(b)(1) of the Public Safety Article.

The permit denial was reversed by the Maryland State Police's Handgun Permit Review Board, which held that the Opinion did not apply to Petitioner's situation. The denial was reinstated by the Circuit Court for Baltimore County. From there, Petitioner proceeded to the Court of Special Appeals, which, also relying on the Attorney General's Opinion, affirmed the Circuit Court and the denial. Petitioner presents the following issue to us:

Whether the Court of Special Appeals erred in following the Attorney General's Opinion in [91 Op. Att'y Gen. 68] as to what constitutes a disqualifying crime.

We shall hold that the Court of Special Appeals did not err in adopting the views expressed in the Attorney General's Opinion to determine what constitutes a disqualifying crime. Accordingly, Sections 5–101(g)(3) and 5–133(b)(1) of the Public Safety Article, which define a disqualifying crime, include out-of-state convictions. When determining whether such a conviction is a disqualifying crime, an agency must look to the maximum penalty for the equivalent offense in Maryland.

## Facts and Legal Proceedings

Petitioner's journey through the handgun permitting process began on July 5, 2008, when he submitted an application to the Maryland State Police ("MSP," also "Respondent") to renew his permit to carry a concealed weapon. The MSP denied Petitioner's renewal application after discovering he had been convicted in the District of Columbia in 2006 of attempting to carry a pistol without a license. The MSP, relying on the Attorney General's Opinion, determined that

this conviction disqualified him under Maryland law from possessing a concealed weapon.

Petitioner appealed this denial to the MSP's Handgun Permit Review Board ("the Board"), which reversed the denial and directed the MSP to issue the permit. The MSP sought judicial review of the Board's decision in the Circuit Court for Baltimore County, and the order to issue Petitioner a permit was stayed pending resolution of the appeal. The Circuit Court reversed the Board's decision, concluding that Petitioner was prohibited from obtaining the permit.

Petitioner timely appealed to the Court of Special Appeals, which affirmed the Circuit Court in a reported opinion adopting the Attorney General's Opinion. *See McCloud v. Dep't of State Police*, 200 Md.App. 725, 28 A.3d 214 (2011). The Court of Special Appeals first held that "a 'disqualifying crime' can be an offense committed out-of-state that, when looking to a comparable violation in Maryland, is a misdemeanor and has a penalty of greater than two years imprisonment." *Id.* at 731, 28 A.3d at 217. To determine whether the out-of-state offense was a disqualifying crime, the court instructed, "we must look to the penalty for the equivalent Maryland offense in effect at the time the person convicted seeks to possess a regulated firearm." *Id.; see also Brown v. Handgun Permit Review Bd.*, 188 Md.App. 455, 480, 982 A.2d 830, 845 (2009). The intermediate appellate court said that if the current penalty for the Maryland offense is different from the penalty in effect at the time of the offense, the current penalty determines whether the offense is a disqualifying crime. *See McCloud*, 200 Md.App. at 731, 28 A.3d at 217. The court also rejected several of Petitioner's secondary arguments.

Petitioner sought review from this Court, and we granted *certiorari* on December 16, 2011. *See McCloud v. Dep't of State Police*, 424 Md. 54, 33 A.3d 981 (2011).

## Discussion

Maryland law prohibits a person from wearing, carrying, or transporting a handgun without a permit. *See* Md.Code (2003,

2011 Repl.Vol.), § 5–303 of the Public Safety Article.[1] MSP may issue a permit if the applicant meets six criteria set forth by the statute. *See* § 5–306(a). Elsewhere, the Public Safety Article prohibits a person from possessing a regulated firearm if he had been previously convicted of a "disqualifying crime." *See* § 5–133(b)(1). The statute defines "disqualifying crime" as:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

§ 5–101(g).

In 2006, MSP asked the Attorney General for his advice on whether a disqualifying crime includes out-of-state offenses. The Attorney General answered that "the disqualification based on prior convictions was intended to include out-of-State convictions." 91 Op. Att'y Gen. at 76. The Opinion also concluded that the agency must look to the equivalent crime in Maryland to determine whether the crime constitutes a disqualifying crime under Sections § 5–101(g)(3) and § 5–133(b)(1). *Id.* at 77.

Petitioner's overarching argument is that "the Court of Special Appeals erred in adopting the Attorney General's Opinion … as to what constitutes a disqualifying crime" under the statutory framework. Regarding the baseline issue contained in that Opinion, Petitioner first appears to concede, in his brief, that Section 5–101(g)(3) applies to out-of-state crimes. Indeed, Petitioner quotes the Attorney General's Opinion, which states

[I]f the statute were interpreted otherwise, an individual who had been convicted of multiple serious offenses in another state and who came to Maryland might face no impediment under Maryland law to acquiring a handgun

---

1. Unless otherwise provided, all statutory references are to Maryland Code, Public Safety Article.

while a lifetime resident with a single local conviction would be subject to the disqualification.

91 Op. Att'y Gen. at 76. He seemingly agrees with the Attorney General, commenting: "[T]his rationale seems prudent and reasonable[.]" In his reply brief, however, Petitioner backtracks, no longer willing to concede that out-of-state convictions can be disqualifying crimes. In his words,

> In its review of the legislative history, the Court of Special Appeals in *Brown* ... noted, and [Respondent] highlights, that prior to 1996, the statute in question expressly provided that disqualifying crimes were those committed "in this State or elsewhere." [Respondent] goes on to point out that [after] the Gun Violence Act of 1996, that phrase was left out of the [revised] statute. In other words, the revision by the Legislature omitted the phrase that would specifically include crimes in other jurisdictions.... Statutory construction begins with the plain language.... The [L]egislature is presumed to have meant what it said and said what it meant. (Citations omitted.)

This ambiguity in Petitioner's argument notwithstanding, Respondent correctly counters that the Court of Special Appeals followed its own precedent in applying the Attorney General's Opinion to Petitioner's situation. As it had held previously, the court held that Section 5–101(g)(3) applies to out-of-state disqualifying crimes and "is intended to be interpreted such that the conviction's potential punishment is measured by reference to the penalty under the law of Maryland for a comparable violation." *McCloud,* 200 Md.App. at 730–31, 28 A.3d at 217 (citations and quotation marks omitted); *see also Brown,* 188 Md.App. at 480, 982 A.2d at 845 (same).

▇▇▇▇ Our cardinal rule of statutory interpretation is to "ascertain and effectuate the real and actual intent of the Legislature." *Robinson v. Balt. Police Dep't,* 424 Md. 41, 50, 33 A.3d 972, 978 (2011) (quoting *State v. Johnson,* 415 Md. 413, 421, 2 A.3d 368, 373 (2010)). We first look to the language of the statute to determine its plain meaning, and we

"neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." *Id.* at 50, 33 A.3d at 978. If we conclude that the language of the statute is "unambiguous and clearly consistent with the statute's apparent purpose," our inquiry as to legislative intent ordinarily ends, and we "apply the statute as written, without resort to other rules of construction." *Id.* at 51, 33 A.3d at 978 (quoting *Johnson*, 415 Md. at 421, 2 A.3d at 373). Additionally, we must always give the statute "a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Johnson*, 415 Md. at 422, 2 A.3d at 373 (citations and quotation marks omitted).

We agree with the Court of Special Appeals that "disqualifying crimes" under Sections 5–101(g)(3) and 5–133(b)(1) include out-of-state offenses. We discern this from the clear words of Section 5–101(g)(3), which defines "disqualifying crime" as including "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." If the Legislature had not intended out-of-state misdemeanors to be included, then it would have simply excluded the words "a violation classified as," and said "a misdemeanor in the State that carries a statutory penalty of more than 2 years." The words "violation classified as a misdemeanor in the State" add out-of-state crimes to the statute's purview if they are equivalent to a Maryland misdemeanor carrying such penalty.[2] These words are clear, and we do not seek guidance from legislative history on the question of whether out-of-state crimes are included.

Furthermore, we have previously held that an out-of-state felony conviction can be a predicate conviction for Section 5–

---

2. Even if the statutory language were not clear on its face, the legislative history supports this interpretation. The Court of Special Appeals thoroughly examined the legislative history in *Brown*, concluding, "[i]n light of the historical progression of Maryland legislation regulating firearms, it would be totally irrational to interpret the current definition of disqualifying crimes to exclude those offenses committed in other states." *Brown v. Handgun Permit Review Bd.*, 188 Md.App. 455, 477–78, 982 A.2d 830, 844 (2009).

133(b).[3]  *See Jones v. State,* 420 Md. 437, 442, 23 A.3d 880, 882 (2011).  After explaining that other states classify misdemeanors and felonies differently than we do, Judge Battaglia, writing for the Court, concluded:

> The diversity of classification systems necessitates the reference to Maryland's own felony classification to ensure uniformity of application of the law.  The rule of lenity does not apply to Jones's conviction for being a felon in possession, because the basis for legislative draftsmanship is clear, and we do not have to guess as to intent.

*Id.* at 459, 23 A.3d at 893 (2011).

We see ambiguity, however, in applying the statute, because it is not perfectly clear whether the two-year imprisonment floor is determined by the penalty in Maryland or in the jurisdiction where the crime was committed.  Petitioner argues, by analogy to federal statutes, that in determining whether a particular conviction is a disqualifying crime, the law of the jurisdiction where the conviction occurred must control.[4]  Petitioner quotes the title to the 1996 amendments to the Maryland statutes (the "Maryland Gun Violence Act" or "Act"), which says that the amendments' intent was to ensure that "sales, transfers, and possessions of firearms prohibited

---

**3.**  Felony convictions are covered under Section 5–101(g)(2) ("a violation classified as a felony in the State"), whereas this case involves a misdemeanor conviction under Section 5–101(g)(3).

**4.**  Although he does not explicitly argue this, Petitioner would be allowed a handgun permit under his interpretation, because the maximum penalty for the D.C. offense he was convicted of, under D.C. law, is one year.  *See* D.C.Code 22–4504(a) (2012) ("No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed.  Whoever violates this section shall be punished as provided in § 22–4515[.]"); D.C.Code 22–4515 (2012) ("Any violation of any provision of this chapter for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than 1 year, or both.").  Because the one-year maximum would not trigger the definition of a disqualifying crime under Section 5–101(g)(3), Petitioner could obtain the permit.

under federal law are prohibited under state law[.]"[5] Chapter 561 of the Acts of 1996. The analogous section of federal law, which the Act was designed to mirror, includes the following in its definition of a disqualifying crime: "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20)(B). Petitioner concludes:

> Maryland's Gun Violence Act does not have such an explicit expression regarding the definition of a disqualifying crime. Adopting the federal practice of using the jurisdiction in which the proceedings were held would remove the inconsistencies in the implementation of the Act.

Respondent acknowledges the contents of the title but counters that nothing about the Act or the current Maryland statutory scheme indicates "an intent to cede control to the federal government or to other states over what constitutes an offense serious enough to merit disqualification from possessing a handgun in Maryland." If that were the case, Respondent argues, then the Legislature could have rescinded Maryland law on the topic and left agencies to apply federal law.

Instead, Respondent directs us to language from *Brown*, in which the Court of Special Appeals held that using Maryland law to determine whether the out-of-state conviction is a disqualifying crime was the most "grammatical" reading of the current statute:

> As part of the recodification process that led to the creation of the Public Safety Article, the provisions formerly set forth in Art. 27, § 445(d)(1), including the prohibition of possession of a firearm by a person who has been convicted

---

**5.** The Legislature must include titles in its enactments. *See* Md. Const. art. III, § 29 ("[E]very Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title[.]"). These titles, as opposed to ones included merely by a codifier, are relevant to the overall purpose of the legislation. *Mass Transit Admin. v. Balt. County Revenue Auth.*, 267 Md. 687, 695–96, 298 A.2d 413, 418 (1973) (holding the title to a chapter of the Acts of 1969 relevant to the overall intent of the statute because "the title of an act is relevant to the ascertainment of its intent").

of a "violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years," were recodified in PS 5–133(b)(1), which now prohibits possession by a person "convicted of a disqualifying crime." Again, a Revisor's Note stated that the newly recodified section was "new language derived without substantive change from former Art. 27, ... § 445(d)...."

Although PS § 5–101(g)(3) currently defines "disqualifying crime" to include "*a* violation classified as a misdemeanor in *the* State that carries a statutory penalty of more than 2 years," because there was no intended substantive change from the source language that appeared in the former Art. 27, § 445(d), we interpret the phrase as if it were still worded "*[a]ny* violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years." (Emphasis added.) As so interpreted, a disqualifying conviction from another state is any violation that would be classified in Maryland as a misdemeanor that carries a statutory penalty of more than two years. (Citation omitted.)

*Brown,* 188 Md.App. at 479–80, 982 A.2d at 844–45. We agree that it is the most grammatical reading.[6]

*Brown* suggested this was the proper reading for two additional reasons: (1) it ensures that the Legislature's judgment for defining a disqualifying criminal propensity would prevail over the judgment of other states' legislatures; and (2) it ensures that all people convicted of similar conduct would be treated equally, under Maryland law, whether that criminal conduct occurred in Maryland or elsewhere. *See id.* at 480–

---

**6.** If the Legislature had intended the penalty to be the one in the jurisdiction where the crime occurred, then it could have defined a disqualifying crime in Section 5–101(g)(3) by adding commas to the current definition, so that it would state: "a violation, classified as a misdemeanor in the State, that carries a statutory penalty of more than 2 years." Furthermore, according to the Maryland Style Manual for Statutory Law in effect when the current language was enacted in the Public Safety Article, legislative drafters are instructed that "to refer to Maryland, use 'the State[.]' " Revisor of Statutes, *Md. Style Manual for Statutory Law* 95 (1985).

81, 982 A.2d at 845. Respondent supplements these points by suggesting that, under the rule advocated by Petitioner, "if two individuals were convicted for identical conduct in two different jurisdictions, one could be prohibited from carrying a handgun in Maryland, but the other could not be."

Petitioner argues that the Attorney General's interpretation is "fraught with problems." Petitioner explains that the MSP would have to find an equivalent Maryland statute for all out-of-state crimes, comparing the elements of the out-of-state conviction with potential Maryland crimes to determine the best match. This, in his view, "could conceivably result in different equivalent offenses for the same conviction elsewhere." While we are sensitive to the potential for inconsistencies, we believe these are adequately addressed by the reasoning above. By relying on Maryland's statutory scheme, we are likely to achieve *more* consistent results across the board, because we ensure that similar conduct is treated equally regardless of where it occurred.

Petitioner attempts to buttress his argument by relying on two Court of Special Appeals cases that demonstrate inconsistency in the application of the Attorney General's Opinion. He first cites a pending case before that court, *Dep't of State Police v. Shilling,* No. 00803, September Term, 2009, in which the applicant's permit had been renewed several times before a denial in light of the Attorney General's Opinion. Petitioner informs us that the Board and the Circuit Court for Baltimore County both ruled that Shilling should be allowed a permit, but that the Attorney General's Opinion would require the opposite result. He then cites *State Police v. McLean,* observing that the applicant there was granted a permit, which was upheld by the Circuit Court for Baltimore County. *See State Police v. McLean,* 197 Md.App. 430, 436, 14 A.3d 658, 662 (2011). Ultimately, however, the agency and the Circuit Court were reversed by the Court of Special Appeals, which applied the same rule that we affirm today. *Id.* at 449, 14 A.3d at 669. Plainly, these cases demonstrate no inconsistency.

Instead, they demonstrate a need for a clear ruling on how the permitting statute should be interpreted.[7] We agree with Respondent, *Brown*, and the Attorney General's Opinion on this issue.[8] By looking to the Maryland equivalent to determine whether an out-of-state conviction is a disqualifying crime, we effect Maryland policy and legislative intent more than we would by leaving it up to other states to define which criminal offenses are serious enough to bar obtaining a handgun permit in Maryland.

We do not ignore Petitioner's argument that deference to the decision-making agency's interpretation is required. Petitioner maintains that the Court of Special Appeals erred in failing to give any weight to the Board's interpretation of the Public Safety statutes when it allowed Petitioner a permit. There is no question that the intermediate appellate court gave no deference to the Board. It held that the relevant sections of the Public Safety article were unambiguous, and it did not "afford weight to the Board's interpretation of them." *McCloud*, 200 Md.App. at 730, 28 A.3d at 216. Petitioner argues that because there are several ways to interpret the Public Safety statutes, we should follow the principle cited in *Valentine v. Bd. of License Comm'rs*, 291 Md. 523, 533, 435 A.2d 459, 464 (1981):

[W]here the language of a statute is susceptible of two constructions, a long-continued and unvarying construction applied by administrative officials is strong persuasive influence in determining the judicial construction of the statute, and it should not be disregarded except for the strongest and most urgent reasons. (Citations omitted.)

---

7. We are also mindful that Maryland policy reflects a "strong desire to keep firearms away from felons and potentially violent persons[.]" *Melton v. State*, 379 Md. 471, 484, 842 A.2d 743, 751 (2004).

8. *See Chesek v. Jones*, 406 Md. 446, 463, 959 A.2d 795, 805 (2008) ("We have said that courts are not bound by an Attorney General's Opinion, but that when the meaning of legislative language is not entirely clear, such legal interpretation should be given great consideration in determining the legislative intention." (quotation marks omitted) (citing *State v. Crescent Cities Jaycees*, 330 Md. 460, 470, 624 A.2d 955, 960 (1993))).

Using this rationale, Petitioner invokes *Brown* and *McLean* to argue that the Board "has consistently defined a 'disqualifying crime' quite differently from the way that the Attorney General proposes," and that this earlier definition should carry weight. *See Brown,* 188 Md.App. at 467, 982 A.2d at 837; *McLean,* 197 Md.App. at 438, 14 A.3d at 663. In *Brown,* the Board had issued three permits to the applicant, knowing that he had a misdemeanor conviction. *See Brown,* 188 Md.App. at 461–66, 982 A.2d at 833–37. After the Attorney General's Opinion was promulgated, Brown was then denied a permit. *Id.* at 461–66, 982 A.2d at 833–37. Likewise, in *McLean,* the applicant had been granted several permit renewals, despite an earlier out-of-state misdemeanor conviction, and was only denied a renewal by judicial review after the Attorney General's Opinion. 197 Md.App. at 435–36, 14 A.3d at 661–62.

Petitioner frames the issue accordingly, arguing that we should apply *Valentine* and defer to the Board's conclusion that Petitioner should be granted a permit:

> For approximately ten years, starting from at least 1997, up until the Attorney General's opinion, the MSP did not define and interpret a disqualifying crime as the AG proposes. During that time there was no attempt by the Legislature to amend PS § 5–101(g) to correct the MSP's interpretation nor to bring the statute in line with the Attorney General's opinion. The [L]egislature's acquiescence in the administrative construction furnishes a strong presumption that the intention has been interpreted correctly.

This argument does not hold up to scrutiny. First, it can hardly be said that the Board was "consistent," let alone "long-continued and unvarying," in defining a disqualifying crime differently than the Attorney General's Opinion. The Board utilized the Attorney General's definition in *Brown* but used a different definition in *McLean* and here. *See Brown,* 188 Md.App. at 466, 982 A.2d at 837; *McLean,* 197 Md.App. at 436, 14 A.3d at 662. Second, the "[L]egislature's acquiescence in the administrative construction" that Petitioner advocates is not fully supported. As to the second point, Respondent argues:

[I]t is undisputed that the General Assembly has not taken any action in response to the 2006 opinion of the Attorney General, the MSP's subsequent application of the relevant statutory provisions, the Board's adoption of the Attorney General's interpretation in the *Brown* case, or the Court of Special Appeals' 2009 decision in Brown. As a result, the General Assembly's acquiescence in the administrative interpretation of the relevant statutes counsels at least as much in favor of MSP's interpretation of the statutes as that advocated by [Petitioner.]

We agree that there is no consistent administrative interpretation to which we should defer.

Instead of adopting Petitioner's suggestion that we give weight to the Board's decision, we have properly examined it under a legally correct standard. *See, e.g., Cathey v. Bd. of Review,* 422 Md. 597, 604, 31 A.3d 94, 98 (2011) ("[I]t is always within our prerogative to determine whether an agency's conclusions of law are correct." (citation omitted)); *see also People's Ins. Counsel Div. v. Allstate Ins. Co.,* 424 Md. 443, 456–57, 36 A.3d 464, 472 (2012) ("[W]e are under no constraint to affirm an agency decision premised solely upon an erroneous conclusion of law." (citation and quotation marks omitted)).

### Conclusion

For the reasons stated above, we hold that Sections § 5–101(g)(3) and § 5–133(b)(1), which define a "disqualifying crime," apply to out-of-state convictions. When determining whether such a conviction is a disqualifying crime, the agency must look to the equivalent offense in Maryland. We therefore hold that the Court of Special Appeals did not err in its application of the Attorney General's Opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**